In the Matter of MULKEY OF
MISSOURI, INC., Debtor.

**CONSTRUCTION CLEARING
HOUSE, INC., Plaintiff,**

v.

**MULKEY OF MISSOURI, INC.,
Defendant.**

Bankruptcy No. 80–00067–3.
Adv. No. 80–0041–3.

United States Bankruptcy Court,
W. D. Missouri, W. D.

March 17, 1980.

Steven C. Block, Paxton, Farrington & Block, P.C., Michael W. Manners, Paden, Welch, Martin, Albano & Graeff, P.C., Independence, Mo., for plaintiff.

Michael H. Berman, Berman, DeLeve, Kuchan & Chapman, Kansas City, Mo., for defendant.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT CONDITIONALLY DENYING PLAINTIFF'S COMPLAINT FOR RELIEF FROM THE AUTOMATIC STAY

DENNIS J. STEWART, Bankruptcy Judge.

Plaintiff brings this action pursuant to § 362(d)(1) of the Bankruptcy Code, seeking

relief from the automatic stay for the purpose of taking into its possession the premises leased from it by defendant, upon which defendant conducts its principal business operations. The hearing was initially set by the court for February 28, 1980, a time within the 30-day period established by § 362(e) of the Code for the conducting of the initial hearing. But, upon written motion and express waiver of the 30-day requirement, the court reset the hearing for March 12, 1980. On that date, the hearing was held.[1] Applying the rules governing admissibility and weight of evidence to the evidence then adduced warrants the following material factual findings.

### Findings of Fact

On April 13, 1978, the parties entered into a written agreement whereby the defendant agreed to lease from the plaintiff, for a 36-month period ending in April 1981 the premises in question. Different payments for different time periods were specified in the lease agreement.[2]

As of December 19, 1979, the defendant was at least[3] $12,550 in arrears in its lease payments. On that date, in an unlawful detainer action previously commenced by the plaintiff in the Circuit Court of Jackson County, a judgment was issued, under the terms of which plaintiff was to have and recover the $12,550 in back rent from defendant and to be restored to possession of the premises on or before January 18, 1980.[4] In the meantime, however, the defendant filed its chapter 11 petition herein on January 11, 1980, thus preventing enforcement of the state court judgment. See §§ 362(a)(2) and (a)(3) of the Bankruptcy Code, further discussed *infra*. Since January 11, 1980, the defendant has kept up the current payments required by the lease, but has not undertaken any effort to cure the default of $12,550. The plaintiff, unable to repossess the property, has retained the services of a realtor in an attempt to sell the property. But, to date, apparently partly[5] because of the pending chapter proceedings and the superabundance of the

1. In the hearing, the plaintiff appeared by Steve Block, Esquire, its counsel, and the defendant by Michael Berman, Esquire, its counsel. Testimony was rendered by Ralph H. Medley, president and general manager of the defendant; Bernard J. Tschirhart; Joe Ganote, Jr.; Robert L. "Jack" Gamble; Henry F. Pacocha; and Fred Bordman.

2. The term of the lease was to run from April 13, 1978, to April 12, 1981. Generally speaking, prior to February 1, 1980, the monthly rental payments were to be $5375. Thereafter, payments of $4375 monthly were to be made, except for a smaller payment at the end of the term of the lease.

3. This is evidenced by a judgment issued on that date by an associate circuit judge of Jackson County· in the amount of $12,550 for back rent. From the evidence which has been adduced in the hearing of this matter, it appears that this is the most reliable figure as to the amount due as back rent prior to the inception of the chapter proceedings. Mr. Medley, the president and general manager of the defendant, admitted in his testimony that, as of the inception of the chapter proceedings, the defendant was three payments of $5375 behind in their account with the plaintiff. This would mean a total of $16,125 was then owed. The plaintiff, at the time of the Jackson County proceedings, claimed more because of "late

payments." A compromise was reached whereby some of the late payments were not allowed and some $4375 which the defendant had put down as an advance deposit with the plaintiff was subtracted from the sum due. This yielded the total of $12,550, which became the sum of the agreed judgment then rendered by the court. (Another $4375 was not credited against this judgment, although it also had been placed with plaintiff by defendant as an advance deposit, for, according to the terms of the lease it was "to be maintained for the full period of the lease . . . to cover the cost of repairs to the building and is not to be considered as payment of advance rent.")

4. Prior to January 18, 1980, the judgment also specified that rent was to be paid at the rate of $5375 per month.

5. The realtor, Fred Bordman, of Bordman and Hutchings, Inc., testified that he had induced a prospective buyer to go on the premises of the debtor to examine those premises with the purpose of possibly making an offer to purchase them. Mr. Bordman testified that, because of the smoke fumes, the prospective buyer became anxious to leave the premises and then was totally dissuaded from making an offer on them when he heard of the within chapter proceedings.

smoke emitted from the defendant's operations, the realtor has not been able to interest any prospective buyer in the premises. Nevertheless, it is the opinion of this realtor that, over the next six months, the market value of the premises should not appreciably decline, provided there is no significant change in market conditions and so long as the smoke damage, which is reparable, is cleaned up. Further, the evidence of defendant is uncontradicted to the effect that continuation of its business on the subject premises is vital to its successful reorganization under chapter 11 and that the cost and disruption of moving to other premises would render impossible the consummation of any reasonable plan of arrangement.

### Conclusions of Law

Sections 362(a)(2) and (a)(3) of the Bankruptcy Code respectively stay any actions to enforce pre-petition judgments and to take any property "from the estate" (as well as "of the estate").[6] This language by logical necessity contemplates the enforced use by a debtor in a chapter case of property not owned by it but in its possession and essential to its successful consummation of a plan of reorganization. Similarly, the nullification of the means of enforcement of a pre-petition judgment necessarily erases the effect of the state court judgment for possession. Against this compelling and inevitable, as well as practical and direct, effect of the statute, the plaintiff's argument that there is presently no lease to enforce is obviously unavailing. The provisions of the lease itself contain nothing which, in the absence of the judgment, would cause its automatic termination. In fact, the evidence shows that late payments may ordinarily be tolerated at the price of the payment of "late charges."[7]

Thus, as of the date of the order for relief herein, the lease must be deemed a viable instrument, provided the defaults are cured in short order and the debtor plans otherwise to comply with its terms, as the debtor has explicitly indicated its intention to do in this case.[8]

But law and equity both[9] require that, if relief from the automatic stay is to be denied, provision must be made to cure the defaults and to protect fully the interests of the plaintiff. Full and adequate protection, it appears from the facts which have been found above, can be offered to the plaintiff on the conditions that (1) the defendant

---

**6.** Section 362 provides pertinently that "a petition filed under section 301 . . . of this title operates as a stay, applicable to all entities, of . . . (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title; (3) any act to obtain possession of property of the estate or of property from the estate."

**7.** The governing lease contains a section on default which provides for termination only after effective re-entry after written notice. That had not yet been accomplished at the time of the inception of the chapter proceedings, according to the evidence in the action at bar.

**8.** The debtor contends that it intends to cure the default, but that it is only required to do so in its plan of arrangement, which it is not required to file under the governing law until May 10, 1980.

**9.** In order to justify denial of relief from the automatic stay, the governing law literally requires that "adequate protection" of the secured creditor's interest in property must be demonstrated. Section 362(d) of the Bankruptcy Code. Traditionally, offering adequate protection to the secured creditor has required that "the debtor has an equity in the property or it is necessary to his performance under the plan and . . . the creditor's security will not be impaired by a stay (and) the creditor may be stayed from foreclosing on appropriate conditions to cure defaults and maintain payments on his claim . . . ." 15 Collier on Bankruptcy para. 13–401.01, p. 13–401–4 and 13–401–5 (1978). Further, as is noted above, the current Bankruptcy Code apparently contemplates continued use of collateral which is not owned by the debtor. See note 6, supra. All the court purports to do here is to enable and require the parties to go through with the written lease agreement which does not expire until April 12, 1981.

cure its default by making up the arrearage within the six-month period during which it is unlikely, according to the uncontradicted evidence, that the fair market value of the property will diminish and (2) the defendant otherwise bring itself into compliance with and otherwise adhere to the conditions of the lease, particularly those whereby it affirmatively undertakes to maintain the subject premises in good repair.[10] In default of its doing so, the plaintiff may, on a proper showing of the necessity for repairs and the amount of money required to make them,[11] be authorized to incur an administrative expense against the chapter estate for this purpose.

It is therefore, for the foregoing reasons.

ADJUDGED that the plaintiff's claim for relief from the automatic stay be, and it is hereby, denied on the conditions (1) that defendant, beginning April 1, 1980, and on the first day of each month thereafter, pay the sum of $2,091.67, in addition to the regular monthly lease payments, to plaintiff until the total of those additional payments shall equal the sum of $12,550 and (2) that defendant otherwise bring itself into compliance and comply with the terms of the subject lease agreement.

---

10. In the hearing of the matter at bar, there have been testimonial allegations of certain parts of the premises not being kept in good repair or working order. Such maintenance the debtor affirmatively undertook to perform in the lease agreement. But present relief in this respect is not accordable because of the vagueness of the evidence presented, omitting, as it does, any estimate of the amount which may be required to accomplish the necessary repairs or other restorations of systems to good working order. When this can be done, it is open to the creditor to seek administrative awards for necessary repairs in the course of these proceedings.

11. See note 10, *supra*.