**In re A. R. DAMERON & ASSOCIATES, INC., Debtor.**

Bankruptcy No. 79–03382A.

United States Bankruptcy Court, N. D. Georgia, Atlanta Division.

March 26, 1980.

John C. Pennington, Atlanta, Ga., for trustee.

Robert H. Hishon and Marnia L. Robinson, Trotter, Bondurant, Griffin, Miller & Hishon, Atlanta, Ga., for Tristar 230 Peachtree.

## ORDER AND MEMORANDUM

W. H. DRAKE, Jr., Bankruptcy Judge.

### STATEMENT OF THE CASE

On November 16, 1979, an involuntary petition in bankruptcy was filed against the above-named debtor. On February 11, 1980, the trustee in bankruptcy for the estate of said debtor applied to this Court for authority to assume an unexpired lease, to assign said lease and to otherwise comply with the provisions of 11 U.S.C. § 365. On February 26, 1980, a hearing was held at which time the Court approved the trustee's application for assumption and assignment of the lease but took under advisement the issue of the amount necessary to cure default under 11 U.S.C. § 365.

On March 12, 1980, Tristar 230 Peachtree (hereinafter referred to as "landlord"), the landlord under the lease, submitted a brief which alleged that the amount necessary to cure default under the lease totals $25,-118.88, which amount consists of back rent, tax escalation charges, construction costs, purchase of louvered drapes and building services.

On that same date, the trustee submitted a brief alleging that "neither the lease nor its subsequent amendment included provisions for construction costs and purchase of louvered drapes and that, accordingly, the amount to cure is $10,697.88," which amount includes back rent, tax escalation charges and building services.

### FINDINGS OF FACT

1.

On October 21, 1978, the debtor entered into a lease with landlord of certain premises known as Suite 2220, located on the 22nd floor in the Peachtree Center Building, 230 Peachtree Street, N. W., Atlanta, Georgia 30303.

2.

The term of the lease was for ten years commencing January 15, 1979 or on the date of the substantial completion of cer-

tain construction or improvements to the premises.

**3.**

Special Stipulation 40.04 of the lease agreement required the landlord to have the premises constructed in accordance with certain final construction drawings, which were to be made part of the lease agreement.

**4.**

On January 4, 1979, the debtor and the landlord entered into an amendment of the lease.

**5.**

On March 22, 1979, the debtor signed a written authorization approving the award of a bid for the construction of the required improvements to the premises.

**6.**

Said authorization also included a draw schedule showing the shares of the cost of the improvements which were to be borne by the debtor and the landlord respectively.

**7.**

Said authorization was intended by the parties to be incorporated into the lease agreement by reference in Special Stipulation 40.05.

**8.**

The debtor owes the landlord $10,697.88 in back rent, tax escalation charges and building services.

**9.**

The debtor owes the landlord $14,421.00 on amount due for the cost of improvements.

## CONCLUSIONS OF LAW

The question presented this Court is what amount must the trustee pay the landlord to cure any defaults in the lease in order to assume the lease under the provisions of 11 U.S.C. § 365. The lease provides that a default includes failure "to pay punctually any rent or other amounts due" under the lease. The trustee argues that the amounts due for the construction of improvements arose not under the lease but under a separate construction contract and that, consequently, the default under the lease consisted only of failure to pay back rent, tax escalation charges and building services. The landlord argues that both parties intended that the construction of improvements to the premises be a condition of the lease, that the construction authorization and draw schedule was incorporated by reference into the lease and that in consequence the unpaid balance of the tenant's share of the draw schedule was an "other amount due" under the lease. This Court agrees with the landlord.

It is necessary to examine the state law concerning the construction of lease agreements to determine the proper result. The Georgia Court of Appeals has stated:

"While it is true that any ambiguity or doubtful provisions in a lease are to be resolved against the lessor (citation omitted), the lease contract must be construed as a whole by the court and not torn apart and construed in pieces." *Bob's Radio Service, Inc. v. F. P. Plaza, Inc.,* 125 Ga.App. 133, 186 S.E.2d 552 (1971).

It is clear from the language of this lease as a whole that the parties intended at the time the lease was signed that there would be construction on the premises as part of the lease. Special Stipulation 40.11 provides that, "the landlord shall commence construction within the Premises within thirty days after receipt of final plans for improvement of the Premises, but in no event earlier than November 15, 1978."

Special Stipulation 40.04 states that, "[t]he Tenant is responsible for any and all costs" due for his share of the expenses of the improvements. It further states that, "landlord is to have the Tenant's suite constructed in accordance with the attached Exhibit 'C' and the soon to be attached Exhibit 'D', final construction drawings, which are to be made part of this lease agreement."

Both the lease itself and the behavior of the parties lend additional weight to the conclusion that the Construction Authorization and Draw Schedule was intended to be incorporated into the lease by Special Stipulation 40.04.

452

The lease states that the term of occupancy of the tenant commences on January 15, 1979 or when the construction of required improvements is completed. The construction authorization and draw schedule was signed March 21, 1979 and the debtor took possession, upon completion of the construction, in the middle of June 1979. The parties did not intend the lease and the construction contract to be separate and severable legal obligations but intended that the construction was a condition of the lease.

Since the construction is clearly a condition of the lease, it follows that the amounts due for the construction under the Draw Schedule are amounts due under the lease.

Paragraph 13 plainly states that a default under this lease includes amounts due other than rent. It provides:

"EVENT OF DEFAULT: Tenant shall be deemed to have committed an 'event of default' if he or any permitted assignee or subtenant or guarantor shall . . fail to pay punctually any rent or other amounts due hereunder . . ."

The conclusion is inescapable that a default under this lease includes not only rent money which the tenant owes, but also construction costs that the tenant incurs above his allowance, as well as other costs called for by the lease.

The Bankruptcy Code requires that before the trustee may assume an unexpired lease of the debtor, he must cure any default. 11 U.S.C. § 365(b)(1)(A). This Court holds that in order to cure the default in this lease the trustee must pay all amounts due under the lease. See *In re Johns*, 5 B.C.D. 1074 (D.Nev.1979).

### ORDER

It is hereby ORDERED and ADJUDGED that the trustee shall pay to the landlord under this lease $25,000.00 in order to cure the debtor's default for the purposes of assumption of said unexpired lease.

IT IS SO ORDERED.