**In re PHELIA ASSOCIATES, INC., Debtor.**

**GENERAL DATA CORPORATION Holiday Inns, Inc. Arlen Realty, Inc., Plaintiffs,**

**v.**

**PHELIA ASSOCIATES, INC., Defendant.**

**Bankruptcy No. 3–81–01653. Adv. Nos. 3–81–0335, 3–81–0336 and 3–81–0340.**

United States Bankruptcy Court, W. D. Kentucky.

Nov. 16, 1981.

David Stosberg, Louisville, Ky., for plaintiffs General Data and Holiday Inns, Inc.

John Reisz, Louisville, Ky., for plaintiff Arlen Realty, Inc.

W. H. Spalding, Jr., Louisville, Ky., for defendant-debtor.

## MEMORANDUM AND ORDER

STEWART E. BLAND, Bankruptcy Judge.

This Chapter 11 proceeding having come before the Court on August 20, 1981, for a combined preliminary and final hearing with respect to three complaints filed on behalf of General Data Corporation, Holiday Inns, Inc., and Arlen Realty, Inc., respectively, each seeking an order lifting the automatic stay pursuant to 11 U.S.C. § 362 and for other related relief.

Phelia Associates, Inc., debtor, filed a petition for relief under the provisions of Chapter 11 of the Bankruptcy Code on June 19, 1981. Previously, Holiday Inns and Phelia executed two license agreements in April, 1978, pursuant to which the debtor operates two Holiday Inn hotels in Louisville, Kentucky, known as the Louisville Central and the Brownsboro Road Holiday Inn (or Holiday Inn Northeast). At about the same time the debtor leased from General Data Corporation, a wholly owned subsidiary of Holiday Inns, Inc., two leases for reservation terminals. This conferred on the debtor the benefit of the computer reservation system of Holiday Inns, commonly known as "Holidex".

Arlen Realty leases to Phelia the premises (buildings and contents) on which the two hotels are operated.

This Court ordered the debtor to assume or reject executory contracts and unexpired leases, and as a result Phelia elected on August 19, 1981, to assume its agreements with the three plaintiffs here, among others.

An evidentiary hearing pursuant to these matters held on August 20, 1981, adduced the following relevant facts:

## Findings of Fact

1. The lease and franchise agreements with Holiday Inns provides for two types of default. One type of default is based on "financial obligations" and the other is a "standards" default.

2. At the time of the filing of the reorganization proceeding, Phelia was in arrears to Holiday Inns in the amount of $29,000–$33,000 on its leases and licensing agreements. Since the date of filing Holiday Inns has received some payment toward these financial obligations.

3. "Standards" default in the agreement is measured by a combination of results from on-site inspections and guest inspections. On-site inspections are conducted periodically by trained personnel according to a standards manual which results in a list of deficiency points relevant to specific matters to be corrected. The inspector then provides the licensee or owner with a copy of the inspection report, and presumably the licensee is given a specific time period in which to correct the deficiencies. Each on-site inspection results in a quality rating of excellent, good, average, fair, or poor.

Guest inspection cards are provided in the inns to gain unsolicited responses from guests. The guests grade the inn as outstanding, good, mediocre, inferior or bad. The cards are tabulated by a central computer which results in a ranking of the 1,541 parent and franchise inns in the domestic system only.

4. The results as of Spring, 1981, on the guest inspections ranked the two Holiday Inns operated by Phelia to be numbers 1,537 and 1,541, respectively. The results of the on-site inspections are:

| Northeast | | Central | |
|---|---|---|---|
| January 1980 | — fair | February 1980 | — fair |
| April 1980 | — average | April 1980 | — fair |
| September 1980 | — average | June 1980 | — poor |
| January 1981 | — fair | March 1981 | — fair |
| March 1981 | — poor | June 1981 | — fair |
| June 1981 | — poor | August 19, 1981 | — poor |

5. The license agreement provides that when an operation receives a second consecutive "poor" rating, this constitutes the issuance of a default of the agreement.

6. There is testimony that approximately $250,000 would have to be expended in order to bring only the Northeast inn out of standards default. However, there is also testimony that the overall appearance of the inn has been improved since the last inspection and some deficiency points have been corrected. The general manager of the hotels, also stockholder of the debtor, has testified that many of the standards deficiencies can be remedied in a "housekeeping" manner without involving large expenditures of funds.

7. As to the Arlens Realty lease, it appears that the debtor owes approximately $22,175 post petition rent, and was in arrears in the approximate amount of $88,-339.50 before the filing of the petition.

8. The central question of these proceedings is whether or not the debtor can assume the leases with the named entities pursuant to 11 U.S.C. § 365(b)(1), which states:

"If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee-

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease."

9. There is testimony by various stockholders in the debtor entity to the effect that any arrearages can be cured and future performance can be assured. However, this testimony presents no firm plan or methodology as to how or when the assumed obligations can be met and appears to be in the nature of speculation of alternatives.

10. The schedules filed pursuant to the debtor's bankruptcy petition reflect that as of the date of filing the debtor had total debts of $845,243.54, and assets on the same date of $127,889.00.

### Conclusions of Law

1. This Court has jurisdiction of the parties and the subject matter of this controversy pursuant to 28 U.S.C. § 1471.

2. An unexpired lease may be assumed by a debtor with the court's approval provided that at the time of assumption the defaults are cured, compensation or adequate assurance of compensation is provided for pecuniary loss due to default, and "adequate" assurance of future performance under such contract or lease" is provided. 11 U.S.C. § 365(b)(1)(A), (B), (C).

3. In a chapter 11 proceeding, a debtor may assume or reject at any time before confirmation of a plan, but the court may order that such be done within a specified time. 11 U.S.C. § 365(d)(2).

4. The debtor has 120 days from the order of relief in which to file a plan. 11 U.S.C. § 1121(b).

5. 11 U.S.C. § 365(b) mandates that, at the time of assumption of a contract or lease, the trustee [debtor] cures or provides adequate assurance that the trustee [debtor] will *promptly* cure defaults. (Emphasis added.) Recent decisions under the Bankruptcy Code have interpreted the term "promptly" variously as fifteen days, *In re Belize Airways Limited*, 6 B.R. 157, 2 C.B. C.2d 657 (Bkrtcy.S.D.Fla.1980); six months, *Matter of Mulkey of Missouri, Inc.*, 5 B.R. 15, 6 B.C.D. 310 (Bkrtcy.W.D.Mo.1980); fourteen days, *In re Bronx—Westchester Mack Corporation*, 4 B.R. 730 (Bkrtcy.S.D. N.Y.1980); at the time of or before assumption of the lease, *In re A. R. Dameron & Associates, Inc.*, 3 B.R. 450 (Bkrtcy.N.D.Ga. 1980); ten months, *In re Lawrence*, 11 B.R. 44 (Bkrtcy.N.D.Ga.1981).

6. In order to justify relief from the automatic stay, the governing law literally requires that "adequate protection" of the secured creditor's interest in property must be demonstrated. 11 U.S.C. § 362(d). Traditionally, offering adequate protection to the secured creditor has required that "the debtor has an equity in the property or it is necessary to his performance under the plan and ... the creditor's security will not be impaired by a stay (and) the creditor may be stayed from foreclosing on appropriate conditions to cure defaults and maintain payments on his claim..." 15 *Collier on Bankruptcy*, ¶ 13–401.01 (14th Ed. 1978).

7. It must be remembered that a bankruptcy court is a court of equity. As a court of equity, the bankruptcy court must consider "the impact of the stay on the parties and to consider the 'balance of hurt' in fashioning relief." *Matter of Epps*, 2 B.R. 737, 6 B.C.D. 379 (S.D.N.Y.1980), citing 2 *Collier on Bankruptcy*, ¶ 362.07 (15th Ed. 1979).

### Memorandum

It has been determined that the debtor is in default on the subject agreements, and it is further evident that the debtor seeks to assume the obligations of those agreements. Much case law has been cited by all parties in briefs to the Court relating to the time period within which defaults must be cured when assuming obligations pursuant to 11 U.S.C. § 365.

Both law and equity would require that, if relief from the automatic stay is to be denied, provision must be made to cure the defaults and to protect fully the interests of the respective plaintiffs. However, no evidence was presented to the Court as to how the debtor intended to cure the defaults. Further, the debtor has not as of this date filed any plan of reorganization with the Court although the 120-day time period would have expired on or about October 19, 1981.

In view of all the surrounding circumstances and with a balancing of the equities and legal interests in this case,

IT IS ORDERED AND ADJUDGED that the debtor shall have thirty (30) days from the date of this order in which to submit to the Court in specific detail a plan whereby

it can assure the plaintiffs herein that cure will be affected and future performances will be assured under the agreements which are sought to be assumed.

IT IS FURTHER ORDERED AND ADJUDGED that approval of the assumption of these leases by this Court is withheld pending submission of the vital information by the debtor, at which time a ruling will be forthcoming as to whether the proposal meets the criteria of 11 U.S.C. § 365(b)(1), and the reasonableness of the time period proposed to cure.

IT IS FINALLY ORDERED that the plaintiffs' claim for relief from the automatic stay be and is denied pending a determination of these other matters.