In re PHELIA ASSOCIATES, INC., Debtor.

GENERAL DATA CORPORATION, Holiday Inns, Inc., Arlen Realty, Inc., Plaintiffs,

v.

PHELIA ASSOCIATES, INC., Defendant.

Bankruptcy No. 3–81–01635.
Adv. Nos. 3–81–0335, 3–81–0336 and 3–81–0340.

United States Bankruptcy Court, W.D. Kentucky.

Sept. 30, 1982.

---

See also, Bkrtcy., 17 B.R. 66.

R. Neal Batson, Atlanta, Ga., John McConomy, Memphis, Tenn., David T. Stosberg, W. Stephen Reisz, Louisville, Ky., for plaintiffs.

W.H. Spalding, Jr., Louisville, Ky., for defendant.

## AMENDED MEMORANDUM AND ORDER

G. WILLIAM BROWN, Bankruptcy Judge.

Phelia Associates, Inc., filed a petition for relief under the provisions of Chapter 11 of the Bankruptcy Code on June 19, 1981. Thereafter, three complaints were filed on behalf of General Data Corporation, Holiday Inns, Inc., and Arlen Realty, Inc., respectively, each seeking an order lifting the automatic stay pursuant to 11 U.S.C. § 362 and for other relief.

## FINDINGS OF FACT

1. Previously, Holiday Inns and Phelia executed two license agreements in April, 1978, pursuant to which the debtor operates two Holiday Inn hotels in Louisville, Kentucky, known as the Louisville Central and the Brownsboro Road Holiday Inn (or Holiday Inn Northeast). At about the same time the debtor and General Data Corporation, a wholly owned subsidiary of Holiday Inns, Inc., entered into two leases for reservation terminals. This conferred on the debtor the benefit of the computer reservation system of Holiday Inns, commonly known as "Holidex". Arlen Realty leases to Phelia the premises (buildings and contents) on which the two hotels are operated.

2. This Court ordered the debtor to assume or reject executory contracts and unexpired leases, and as a result Phelia elected on August 19, 1981, to assume its agreements with the three plaintiffs here, among others. Pursuant to these complaints, this Court issued a Memorandum and Order on November 16, 1981, which allowed the debtor a period of thirty (30) days in which to file a plan to cure the arrearages owing to these plaintiffs. 17 B.R. 66. On December 16, 1981, an original plan to cure the arrearages owing to the three complaining creditors was submitted.

3. This plan envisioned curing the arrearage as to all three complaining creditors on or before June 16, 1982. The arrearages due and owing and encompassed within this proposal covered $88,000.00 due Arlen, and $22,000.00 collectively due Holiday Inn and General Data. This cureage was to be accomplished as follows:

It was projected that additional revenues would be generated in the total sum of $239,000.00 through increased room, restaurant and bar rates during the six-month interval. See *Plan to Cure Arrearages & Defaults,* Section I, *The Plan,* paragraphs 3e. and 3f., filed December 16, 1981.

4. The plan further states that with this additional income, the entire prepetition arrearage of Arlen, Holiday Inn and General Data would be cured, as well as a prepetition arrearage of $6,000.00 due Citizens Fi-

delity Bank on a land lease upon which the facilities were located. Achievement of this projection would have cured all of the arrearages and produced an additional surplus of funds to the debtor of $116,000.00. A review of the cash flow actually received by Phelia on both locations for the period ending June 15, 1982, reflects a positive cash flow of $25,000.00 from all gross receipts and expenditures, and which may or may not have resulted from the proposed increased room, restaurant and bar rates.

5. It appears from the record and the evidence obtained at subsequent hearings that the prepetition arrearage due Arlen has not been materially cured, if at all, nor have the arrearages of Holiday Inn and General Data been reduced. It further appears that as of September 13, 1982, there is no postpetition arrearage due Arlen, but there now exists approximately $15,000.00 due Holiday Inn and General Data, and an additional postpetition arrearage due Citizens Fidelity on the land lease.

6. A continued evaluation of the cash flow analysis for the period June 15, 1982, through September 5, 1982, indicates a positive cash flow from the debtor's combined operations of less than $1,000.00.

7. On July 22, 1982, apparently recognizing the failure of the December 16, 1981, original plan, an amended plan to cure the arrearage was filed. Under this proposal the Holiday Inn-General Data arrearage is to be cured over a five and one-half (5½) month period, and the arrearage due Arlen is proposed to be cured within sixteen and one-half (16½) months. There was no statement as to how the prepetition arrearage due the land owner of $9,700.00 was to be brought current, nor were the postpetition arrearages due Holiday Inn-General Data of $15,000.00 and $4,000.00 due Citizens on the land lease addressed as to the method of payment. At the hearing held September 13, 1982, the debtor indicated that currently it is unable to cure the postpetition arrearage due Citizens Fidelity unless it is allowed extended time terms, nor is it in a position to cure the prepetition arrearage to Citizens without like terms.

8. On August 26, 1982, Arlen moved to require the debtor to cure all defaults on the ground lease at Holiday Inn Central and to provide adequate assurance of future performance. It was pursuant to this motion and the response thereto by the debtor that the hearing on September 13, 1982, was conducted. At said hearing, in addition to these issues, Holiday Inn-General Data, by counsel, renewed their objections to the amended plan to cure arrearage and insisted that the stay be lifted. Arlen, in its motion and at said hearing, insisted that the entire arrearage, prepetition and postpetition, due Citizens in the approximate amount of $13,000.00 must be brought current because failure to do so would jeopardize the land lease held by Arlen and would preclude said creditor from obtaining an estoppel certificate due to the existing arrearages and some admittedly unpaid taxes due and owing by the debtor. Simply stated, the debtor is unable to comply with this demand.

9. It is evident that the original plan to cure the arrearages due these creditors was unrealistic, and that the cash flow analysis of the debtor's operation for the period June 15 through September 5, 1982, lends little, if any, credence to the amended plan to cure these arrearages over the projected sixteen and one-half (16½) months, nor has any viable plan been submitted to satisfy the prepetition and postpetition arrearages due Citizens Fidelity, which further imperil the land lease held by Arlen.

10. It must be noted that Chapter 11 relief was obtained by this debtor upon the filing of the petition on June 19, 1981, and no plan of reorganization has, as of this date, been filed, all efforts to date being directed to submission of a viable plan addressed solely to the issue of curing the arrearages due these plaintiffs. Also the "standards defaults" existing in the operation of these two facilities as set forth in the complaint of Holiday Inn have not been as yet seriously considered as to the monetary amounts needed by the debtor to bring these facilities within the acceptable guidelines for retention of license privileges.

## CONCLUSIONS OF LAW

1. In order to assume the leases in the instant case, the debtor must comply with the requirements of 11 U.S.C. § 365(b)(1), which applies to a case filed under the provisions of Chapter 11 and which states in pertinent part:

"If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor· to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease."

2. 11 U.S.C. § 365(b) mandates that, at the time of assumption of a contract or lease, the trustee [debtor] cures or provides adequate assurance that the trustee [debtor] will *promptly* cure defaults (emphasis added). Recent decisions under the Bankruptcy Code have interpreted the term "promptly" variously as fifteen (15) days, *In Re Belize Airways Limited,* 5 B.R. 152, 2 C.B.C.2d 657 (Bkrtcy.S.D.Fla.1980); six (6) months, *Matter of Mulkey of Missouri,* 5 B.R. 15, 6 BCD 310 (Bkrtcy.W.D.Mo.1980); fourteen (14) days, *In Re Bronx-Westchester Mack Corporation,* 4 B.R. 730 (Bkrtcy.S.D.N.Y.1980); at the time of or before assumption of the lease, *In Re A.R. Dameron & Associates, Inc.,* 3 B.R. 450 (Bkrtcy.N.D.Ga.1980); ten (10) months, *In Re Lawrence,* 11 B.R. 44 (Bkrtcy.N.D.Ga.1981).

3. In order to justify relief from the automatic stay, the governing law literally requires that "adequate protection" of the secured creditor's interest in property must be demonstrated. 11 U.S.C. § 362(d). Traditionally, offering adequate protection to the secured creditor has required that "the debtor has an equity in the property or it is necessary to his performance under the plan and . . . the creditor's security will not be impaired by a stay (and) the creditor may be stayed from foreclosing on appropriate conditions to cure defaults and maintain payments on his claim. . . ." 15 *Collier on Bankruptcy,* ¶ 13–401.01 (14th Ed. 1978).

4. It must be remembered that a bankruptcy court is a court of equity. As a court of equity, the bankruptcy court must consider "the impact of the stay on the parties and to consider the 'balance of hurt' in fashioning relief." *Matter of Epps,* 6 BCD 379 (S.D.N.Y.1980), citing 1 *Collier on Bankruptcy,* ¶ 362.07 (15th Ed. 1979).

## MEMORANDUM

Both law and equity would require that, if relief from the automatic stay is to be denied, provision must be made to cure the defaults and to protect fully the interests of the respective plaintiffs.

It is apparent, in view of the history of this case both from a factual performance and a projected expectation, that the plaintiffs are entitled to the relief originally requested.

It is believed that every consideration has been extended the debtor to facilitate the hoped for rehabilitation within the inherent limitations of income and expenses, and with the opportunity to effectuate such needed operational adjustments and restructuring of. room, restaurant and bar rates to increase income potential. However, not only has a meaningful solution to the prepetition arrearages not been forthcoming, but a review of the cash flow analysis over an extended period leaves no conclusion but that the situation as to these plaintiffs displays further erosion.

This Memorandum and Order constitutes Findings of Fact and Conclusions of Law pursuant to Rule 752, Rules of Bankruptcy Procedure.

In view of all of the foregoing and for the above reasons, and the Court being otherwise sufficiently advised,

IT IS ORDERED AND ADJUDGED that the automatic stay pursuant to 11 U.S.C. § 362 be and is lifted as to these three plaintiffs, Arlen Realty, Inc., Holiday Inns, Inc., and General Data Corporation. This is a final order.

A copy of this Memorandum and Order is mailed to all parties in interest.