**In re Donald L. HARRISON, Debtor.**

**Bankruptcy No. LA 86–12502–JD.**

United States Bankruptcy Court,
C.D. California.

July 16, 1990.

Goldman, Gordon & Lipstone, Los Angeles, Cal., for debtor.

Clark & Trevithick, Los Angeles, Cal., for Shell Oil Co.

## MEMORANDUM OF DECISION ON APPLICATION TO COMPEL SURRENDER OF NON–RESIDENTIAL REAL PROPERTY BY DEBTOR–IN–POSSESSION PURSUANT TO 11 U.S.C. § 365(d)(4)

JAMES R. DOOLEY, Bankruptcy Judge.

This matter is before the court on an application filed by Shell Oil Company to compel the debtor to surrender two non-residential real properties, pursuant to 11 U.S.C. § 365(d)(4). The chapter 11 debtor and debtor in possession responded and has filed a cross-motion to assume executory contracts and unexpired non-residential leases and for relief from a forfeiture of the two non-residential leases under § 1179 of the California Code of Civil Procedure.

A hearing was held on the application on December 11, 1989, at the conclusion of which the court took the issues under advisement. The Bankruptcy Court has jurisdiction over the application for order to compel the debtor to surrender the nonresidential properties herein since the application concerns administration of the estate. 28 U.S.C. § 157(b)(2)(A).

The court has concluded that Shell Oil's Application to Compel the Debtor to Surrender the Non-residential Real Properties should be denied for the following reasons:

1.) The Motor Fuel Station leases were each executed contemporaneously with the respective dealer agreements and other related writings and those writings combined control the franchise relationship between Shell Oil and the debtor; therefore there is one agreement for each of the Shell Oil Franchises which pursuant to 11 U.S.C. § 365 are executory contracts.

2.) 11 U.S.C. § 365(d)(4) is not applicable to this case because each respective Motor Fuel Station Lease is integrated with the Dealer Agreements and other related writings to form one agreement for each franchise, and such agreements are not required to be assumed or rejected within 60 days of the order for relief.

## STATEMENT OF FACTS

On July 22, 1986, the debtor and debtor in possession, Donald Harrison [hereinafter "Debtor"], entered into a Dealer Agreement, Motor Fuel Station Lease and Auto Care Agreement with Shell Oil Company [hereinafter "Shell Oil"], effective December 1, 1986, for the real property known as Don's Shell No. 1, located at 12313 West Jefferson Blvd. Culver City, California. Although, these writings expired on November 30, 1989, Shell Oil and the debtor have agreed since that date to extend the terms on a month to month basis until a determination has been rendered on the dispute herein. The debtor also has a second facility known as Don's Shell No. 2, located at 1129 Sepulveda Blvd., Manhattan Beach, California. The Dealer Agreement, Motor Fuel Station Lease and Auto Care Agreement with Shell Oil and the debtor for this facility is effective May 1, 1988 through April 30, 1991.

On June 7, 1989, the debtor filed a voluntary petition for reorganization under chapter 11 of the Bankruptcy Code.[1] On October 11, 1989, Shell Oil filed an application for an order to compel the debtor to surrender two non-residential real properties known as Don's Shell No. 1 and Don's Shell No. 2 because the debtor did not assume or reject the Motor Fuel Station Leases within 60 days of filing the chapter 11 case herein. Shell Oil has premised its application on 11 U.S.C. § 365(d)(4).

In response the debtor contends that the dealer agreements are the overall agreements between the debtor and Shell Oil; and that the dealer agreements include each respective Auto Care Agreement, Auto Care Limited Warranty, and Motor

---

**1.** 11 U.S.C. § 101 et seq. All section references are to the Bankruptcy Code unless otherwise noted.

Fuel Station Lease. The debtor argues that all of these writings must be read as one agreement governing the conduct of the debtor with respect to the two non-residential real properties in question. In the debtor's response there is also a cross-motion for approval of the court to assume the Dealer Agreements, Motor Fuel Station Leases, Auto Care Agreements and Auto Care Limited Warranties.

## LEGAL ANALYSIS

### I. ASSUMPTION OR REJECTION OF MOTOR FUEL STATION LEASES

This court is asked to resolve the question of whether the debtor in possession in the context of a franchise relationship, must assume or reject Motor Fuel Station Leases for two non-residential real properties within 60 days of the order for relief pursuant to 11 U.S.C. § 365(d)(4). Under 11 U.S.C. § 365(d)(4), it is provided in part as follows;

> "... if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes then such lease is deemed rejected, and the trustee shall immediately surrender such non-residential real property to the lessor."

This subsection was expressly intended to lessen the problems caused by extended vacancies and partial operation of tenant space in shopping centers. 1984 U.S.Code Cong. & Admin.News 576, 590, 598–599; *In re Southwest Aircraft Services*, 831 F.2d 848, 857 (9th Cir.1987).

Unlike the shopping center enterprise, a petroleum products franchise presents a different model where there are leases as well as dealer agreements governing the relationship between the parties. Congress

has regarded a franchise in the petroleum products industry as;

> "... unusual, in fact perhaps unique, in that the franchisor commonly not only grants a trademark license but often controls & leases to the franchisee the real estate premises used by the franchisee. In addition, the franchisor almost always is the primary, even exclusive supplier of the franchisee's principal sale item, motor fuel. This relationship is, therefore, often complex and characterized by at times competing interests."

S.Rep. No. 731, 95th Cong., 2d Sess. 17 (1978), 1978 U.S.Code Cong. & Admin. News pp. 873, 875.

In June 1978, Congress enacted the Petroleum Marketing Practices Act[2], [hereinafter "PMPA"], title I of which was designed to protect motor fuel dealers from arbitrary or discriminatory termination of their franchises. 15 U.S.C. § 2801; *Fresher v. Shell Oil Co.*, 846 F.2d 45, 46 (9th Cir.1988); *Khorenian v. Union Oil Co., of California*, 761 F.2d 533, 535 (9th Cir. 1985). Under PMPA, a franchise is defined to include; (i) a lease between a dealer and a refiner or distributor pursuant to which the dealer occupies service station property for the purpose of sale of motor fuel under the refiner's trademark, and (ii) a contract pursuant to which the dealer purchases gasoline for resale under a trademark of a refiner. 15 U.S.C. § 2801(1)(A) (Supp. 1990).

Typically, under a dealer agreement the branded gasoline dealer sells gasoline purchased from a refiner pursuant to a Dealer's Agreement of specified term. The Dealer's Agreement commonly covers the price of gasoline purchased by the dealer, payment terms, use of the refiner's brand identification (including the refiner's trademarks), maintenance of product quality, maintenance of company-supplied equipment, product deliveries, general standards for operation of the dealer's business and

---

**2.** The PMPA was enacted on June 19, 1978. Only Title I of the PMPA is germane to this case; all references to the PMPA pertain only to Title I which is codified at 15 U.S.C. §§ 2801–2806 (Supp.1990). Title II requires the testing, certification and retail display of octane ratings of

automotive gasolines. See 15 U.S.C. §§ 2821–2824. Title III authorizes the Secretary of Energy to study practices of motor fuel refiners which subsidize fuel marketing operations with the proceeds derived from other petroleum-related operations. See 15 U.S.C. § 2841.

dealer compliance with applicable laws and regulations. The dealer may own his own service station or may lease the station from the refiner pursuant to a written lease. The lease with the refiner may be embodied in a separate written agreement or may be integrated with the Dealer's Agreement. Casher and Trachtenberg, "Caveat Franchisor: The Interplay of the Bankruptcy Code and the Petroleum Marketing Practices Act", Com.L.J. 216 (1982).

Although there may be separate writings for the lease and dealer agreement, it has been held that both the service station lease and the dealer agreement should be construed together and considered to form an integrated business relationship. *Ashland Oil, Inc., v. Donahue*, 223 S.E.2d 433 (1976); See also, *In re A.R. Dameron Assoc.*, 3 B.R. 450 (Bkrtcy.N.D.Ga.1980). An integrated business relationship is found when both writings deal with the operation of a gasoline station at identified premises and provide for the same initial term and automatic extensions from year to year, provide for sale and delivery of gasoline and for conduct of business on part of the dealer with skill and diligence and when rental provisions were directly related to the sale and delivery of gasoline. *Ashland Oil, Inc.,* supra at 433.

In this case, the respective dealer agreements were executed contemporaneously with each motor fuel station lease. These documents are between the same parties, Shell Oil and the debtor. The location of the Dealer stations authorized under the motor fuel station leases are stated in the Dealer Agreements which specify the use and maintenance requirements for the premises under lease. Each dealer agreement and motor fuel station lease together provide for the sale and delivery of gasoline and other petroleum products for resale during the term stated in the dealer agreement. Moreover, it is provided under the Dealer Agreement that:

"This agreement (along with any related agreements which may be executed simultaneously herewith) comprises the entire agreement and merges and supersedes all prior agreements, understandings, representations, and warranties (oral or written, express or implied)

between Shell and Dealer concerning the subject matter or in consideration hereof."

The court finds that the respective Dealer Agreement, Motor Fuel Station Lease, Auto Care Agreement and Auto Car Limited Warranty with Shell Oil and the Debtor were executed contemporaneously with the intent to authorize use and resale of Shell Oil petroleum products at the designated facilities. These writings together control the franchises and relationship between the parties. The court concludes that the Dealer Agreement, Motor Fuel Station Lease, Auto Care Agreement and Auto Car Limited Warranty are integrated to form one controlling agreement between the parties. The provision of 11 U.S.C. § 365(d)(4), requiring assumption or rejection of non-residential leases within 60 days is therefore not applicable to the facts in this case. Therefore, the debtor should not be compelled to surrender the Shell Oil facilities for failure to assume or reject the motor fuel station leases.

## II. CROSS–MOTION TO ASSUME EXECUTORY CONTRACTS

While the court is satisfied that the Motor Fuel Station Lease at each location, which is included in the franchise relationships between the parties, should not be deemed rejected pursuant to 11 U.S.C. § 365(d)(4), the court is not prepared on the present record to allow the debtor to assume the executory agreements embodied in the various franchise documents. This is particularly true with respect to the location at 12313 West Jefferson Blvd., Culver City, California; since the franchise documents at this location expired on November 30, 1989 and the parties have extended their terms on a month-to-month basis pending this court's decision.

This court is of the view that further hearing is required on debtor's cross-motion to assume executory contracts and a status conference on this motion will be calendared for August 28, 1990 at 2:00 P.M.