In re TRS, INC., Debtor.

TRS, INC., Plaintiff,

v.

PETERSON GRAIN & BROKERAGE COMPANY, INC., Defendant.

Bankruptcy No. 87–20001.
Adv. No. 87–0182.

United States Bankruptcy Court,
D. Kansas.

Aug. 13, 1987.

Eric C. Rajala, Overland Park, Kan., for debtor/plaintiff.

George J. Schlagel, Olathe, Kan., for defendant.

Carol Park, Wichita, Kan., U.S. Trustee.

## MEMORANDUM OPINION AND ORDER

BENJAMIN E. FRANKLIN, Chief Judge.

This case came for trial on July 6, 1987, on the plaintiff/debtor's, TRS, Inc., complaint seeking to enjoin the defendant, Peterson Grain & Brokerage Company, Inc., from levying and executing on its judgment against the president of the debtor. The plaintiff appeared through counsel, Eric C. Rajala. The defendant appeared through counsel, George J. Schlagel.

### FINDINGS OF FACT

Based on the testimony, the pleadings, and the record, this Court finds as follows:

1. The plaintiff/debtor, TRS, Inc., is a Kansas corporation doing business in Olathe, Kansas. The plaintiff/debtor is in the business of manufacturing and distributing pet foods and supplies.

2. Thomas R. Swortwood is the president and sole managing officer of TRS, that a reasonable rate for such an appearance is $150 per hour.

Inc., for which he receives a $3,000 a month salary. Swortwood also owns 43% of the debtor's stock.

3. Prior to the bankruptcy, TRS, Inc. incurred a debt to the defendant, Peterson Grain & Brokerage Company, Inc. Sometime later Swortwood personally guaranteed this debt.

4. On January 5, 1987, TRS, Inc. filed a petition for relief under chapter 11 of Title 11 of the United States Code.

5. Swortwood did not personally file for bankruptcy.

6. On June 22, 1987, Peterson Grain & Brokerage Company, Inc. obtained a default judgment against Swortwood based on the guaranty in the amount of $40,400 in the District Court of Johnson County.

7. On June 30, 1987, TRS, Inc. filed both a Motion for a Temporary Restraining Order and a Complaint for a Preliminary Injunction against Peterson Grain & Brokerage Company, Inc., seeking to prevent the grain company from levying and executing against Swortwood based on the prior judgment.

8. This Court signed the temporary restraining order on July 1, 1987, and set down the complaint for preliminary injunction for hearing. On July 6, 1987, this Court held a hearing to determine whether or not to grant the preliminary injunction. At that hearing Swortwood testified that judgment was entered against him in the District Court of Johnson County, Kansas, on the petition of Peterson Grain & Brokerage Company, Inc., arising from the delivery of grain products to TRS, Inc., prior to the filing of the bankruptcy petition. He testified that he is the sole managing officer of the plaintiff and as such devotes his full time and efforts to the operation of the business and development of the plan of reorganization. He testified that in order to propose a feasible plan of reorganization that plaintiff needs to lower its secured debt and free up cash flow by the sale of all or at least a substantial portion of its real estate. Moreover, he testified that the debtor's projections indicate that the loan secured by the debtor's inventory should be paid in full as of March, 1988 under the

terms of the amended cash collateral order previously filed with the Court, thereby freeing up additional cash flow for funding of a plan of reorganization. Further, Swortwood testified that the real estate has been listed with the broker and that the debtor anticipates the sale of all or at least a major portion of the real estate prior to the end of 1987. Swortwood also testified that he has virtually no non-exempt assets other than the salary received from the debtor in the amount of $3,000 per month and his stock ownership in the debtor amounting to approximately 43% of the outstanding stock. Swortwood testified that he is financially incapable of satisfying the defendant's judgment and that he has very little incentive to continue in his duties as president of the debtor, but for the possibility that, upon the confirmation and consummation of a plan of reorganization, his 43% stock interest in the debtor may once again have value. He testified that, in the event the defendant is permitted to levy upon his stock or to garnish his wages from the debtor, he will be forced to seek protection of the bankruptcy court personally, thereby assuring the loss of his interest in the stock of TRS, Inc., which would therefore render any further efforts on his behalf to reorganize TRS, Inc. a fruitless endeavor.

ISSUES OF LAW

I. DOES SECTION 105(a) OF THE CODE EMPOWER THIS COURT TO ENJOIN A CREDITOR FROM LEVYING AND EXECUTING AGAINST THE PRESIDENT OF THE DEBTOR CORPORATION IN A CHAPTER 11 CASE?

II. IF SO, IS THE PLAINTIFF IN THIS CASE ENTITLED TO INJUNCTIVE RELIEF?

CONCLUSIONS OF LAW

I. *Jurisdiction of the Bankruptcy Court under Section 105(a).*

The plaintiff's complaint seeks to enjoin the defendant, Peterson Grain & Brokerage Company, Inc., from executing or

levying upon the property of Thomas R. Swortwood, president of the debtor, TRS, Inc. Peterson Grain obtained a judgment against Thomas R. Swortwood based on a corporate debt which Mr. Swortwood had obligated himself to pay in an effort to forestall the acceleration of the corporate debt prior to the filing of the debtor's petition in bankruptcy.

This matter brings into focus a question raised with increasing frequency in chapter 11 cases—What is the scope and reach of the automatic stay and the limits of the extraordinary power granted by section 105(a)? This question is usually presented by parties who either seek relief from the automatic stay for cause pursuant to section 362(d)(1), *See, e.g., In re Phelia Associates, Inc.,* 26 B.R. 235 (Bankr.W.D.Ky. 1982), or by debtors who seek to protect not the debtor itself, but third parties who are involved with the debtor usually but not always in a capacity of a principal of the debtor. *See, e.g., In re Johns-Manville Corp.,* 40 B.R. 219 (S.D.N.Y.1984); *In re Holtkamp,* 669 F.2d 505 (7th Cir.1982); *In re Penn-Dixie Industries, Inc.,* 6 B.R. 832 (S.D.N.Y.1980); and, *In re McGraw,* 18 B.R. 140 (Bankr.W.D.Wis.1982). The latter is precisely what is involved in this chapter 11 case. The debtor, TRS, Inc., under section 105(a) requests this Court to enjoin the creditor, Peterson Grain & Brokerage Company, Inc., from levying and executing against the president and 43% stockholder of the debtor, Thomas R. Swortwood.

It is well settled that section 362 of the Code, which stays *actions against the debtor* and *against property of the estate,* does not forbid actions against its non-debtor principals, partners, officers, employees, co-obligors, guarantors, or sureties. *See, e.g., Otoe County National Bank v. W & P Trucking, Inc.,* 754 F.2d 881, 883 (10th Cir.1985); and *Fortier v. Dona Anna Plaza Partners,* 747 F.2d 1324, 1330 (10th Cir.1984). The legislative history shows that Congress may have considered the issue of a general stay of actions against guarantors in reorganization cases, but apparently rejected such a blanket stay and limited co-debtor stays to chapter 13. *See* 11 U.S.C. § 1301. As enacted, chapter 11 contains no specific provision authorizing stays against third parties. Therefore, the sole statutory basis for the issuance of an injunction against these collection efforts is section 105(a) which provides in part that a bankruptcy court may "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."

This Court has no doubt that it has jurisdiction in appropriate circumstances to grant injunctive relief under section 105(a) where it affects the reorganization of the debtor. Under this provision, several bankruptcy courts have used the injunctive power to provide temporary protection to third parties during the pendency of a chapter 11 case. *See, e.g., In re Otero Mills, Inc.,* 21 B.R. 777 (Bankr.D.N.M.) *aff'd,* 25 B.R. 1018 (D.N.M.1982) (Creditor temporarily enjoined from foreclosing against property of the debtor's president in the execution of judgment arising from personal guarantees of the debtor's.) *In re Original Wild West Foods, Inc.,* 45 B.R. 202 (Bankr.W.D.Tx. 1984) (IRS enjoined from collecting 100% tax penalty for unpaid pre-petition withholding and employment taxes from an officer, director, and shareholder of the chapter 11 debtor); and *In re Johns-Manville Corp.,* 26 B.R. 405 (Bankr.S.D.N.Y.1983) *aff'd,* 40 B.R. 219 (S.D.N.Y.1984) (Section 105 permits bankruptcy courts to enjoin creditors' actions against guarantor). In extraordinary cases, and under limited circumstances, the exercise of this power is necessary and appropriate to carry out the objectives of chapter 11. *In re Arrow Huss, Inc.,* 51 B.R. 853 (Bankr.D.Utah 1985).

The Court notes that the defendant relies on three cases, *In re Supermercado Gamboa, Inc.,* 68 B.R. 230 (Bankr.D.Puerto Rico 1986), *In re Loughnane,* 28 B.R. 940 (Bankr.D.Colo.1983), and *In re Venture Properties, Inc.,* 37 B.R. 175 (Bankr.D.N. H.1984), to challenge this Court's jurisdiction to grant injunctive relief under section 105(a) in the present circumstances. This Court, however, disagrees with the defendant's analysis and conclusions. *Supermercado* only held that an injunction could not

be issued upon a generalized, non-specific conclusion of irreparable harm to the estate, and that specific facts would have to be alleged and proved which would justify granting the injunction. *Loughnane* did not even speak to the issue of whether an injunction would lie under section 105(a). Finally, although *Venture Properties* could be read to challenge this Court's jurisdiction under section 105(a), *Venture Properties* is clearly a minority view which this Court chooses not to follow. The vast majority of the cases side with the plaintiff in this case.

## II. *Propriety of Injunctive Relief.*

Since the debtor is seeking an "injunction", this Court is governed by the principles which govern injunctions in general. *In re Provincetown Boston Airline, Inc.,* 52 B.R. 620, 624 (Bankr.M.D.Fl.1985). Under these principles, there are four prerequisites which the moving party must establish: (1) A substantial likelihood that the movant will eventually prevail on the merits; (2) A showing that the movant will suffer irreparable injury unless the injunction issues; (3) Proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) A showing that the injunction, if issued, would not be adverse to the public interest. *Lundgrin v. Claytor,* 619 F.2d 61, 63 (10th Cir.1980). The movant's burden of proof is a heavy one and must be supported by substantial evidence, the quantum of which will necessarily vary depending on the scope and duration of the stay sought. *In re Arrow Huss, Inc.,* 51 B.R. 853, 859 (Bankr.D.Utah 1985).

■ In the bankruptcy context, the probability-of-success on the merits requirement is generally defined as the possibility of successfully effectuating a plan of reorganization. *See In re Arrow Huss, Inc.,* 51 B.R. 853, 858 (Bankr.D.Utah) (*citing In re Otero Mills, Inc.,* 21 B.R. 777, 779 (Bankr. D.N.M.1982). This Court finds that the debtor sustained his burden as to the first prerequisite. The uncontroverted testimony of Thomas Swortwood, president of TRS, Inc., indicates that the debtor is making significant progress toward the formulation of a plan of reorganization.

■ The second element, irreparable injury to the movant (debtor) if the injunction is not granted is a more troublesome issue to this Court. The defendant argues that the debtor cannot demonstrate irreparable injury in this case. The defendant argues that in order to establish irreparable injury to the estate, the debtor must show that the defendant is executing on certain property owned by the third party which the debtor is using to reorganize. *In re Mahaffey,* 40 B.R. 469 (Bankr.D.Colo.1984), the bankruptcy court refused to grant an injunction absent evidence that a third party guarantor will contribute personal assets to the reorganization. The Court stated:

In my view, enjoining a creditor from proceeding against a third-party guarantor, even though such guarantor is a key employee of the debtor's business, would set a dangerous precedent, absent evidence that such guarantor will contribute personal assets to the reorganization. It is not uncommon in bankruptcy business reorganizations for the principal employees of the debtor to be devoting a great deal of extra time to the business, in an effort to effectuate a plan of reorganization. I do not believe the code goes so far toward debtor protection as to allow the court to insulate such employees from their individual liabilities, whether they be on guarantees of the debtor's responsibilities or on personal liabilities of another nature.

However, after reviewing the case law, this Court must disagree with the *Mahaffey* analysis. This Court fails to see the logic behind limiting the irreparable injury requirement to only those cases in which the third-party is contributing assets to the debtor. An irreparable injury is an irreparable injury regardless of why or how it will come about. On the contrary, the Court should look at *all* the facts on a case by case basis to determine if the debtor established irreparable injury requirement, not just to the fact that the third-party is or

is not contributing assets to the reorganization.

Looking at all the facts in this case, this Court finds that the debtor proved the requisite irreparable injury. Swortwood testified that he is the sole managing officer of the plaintiff, TRS, Inc., and as such, he devotes his full time and efforts toward the operation of the business and the development of a plan of reorganization. He testified that in order to propose a feasible plan of reorganization, the debtor needs to lower its secured debt and free up cash flow by the sale of all or at least a substantial portion of its real estate. Furthermore, Swortwood testified that he is financially incapable of satisfying the defendant's judgment. He has virtually no nonexempt assets other than his salary and his 43% stock ownership in the debtor. He testified that he has very little incentive to continue in his duties as president unless his stock may once again have value upon confirmation and consummation of a plan. In addition he testified that in the event the defendant is permitted to levy upon his stock or garnish his wages, he will be forced to take personal bankruptcy. In all likelihood, he would lose his stock in personal bankruptcy which would render any further efforts on his behalf to reorganize TRS, Inc., a fruitless endeavor. In other words, he testified that unless this Court grants the injunctive relief, he will ultimately be forced to abandon the reorganizational effort, file for bankruptcy, and seek employment elsewhere. Under this scenario, TRS, Inc. would have to liquidate and would be unable to pay a dividend to unsecured creditors or shareholders, thereby causing irreparable injury to the estate.

Next, this Court finds the debtor established the third element, that the injunctive relief will not cause substantial harm to the party against whom the injunction is granted. In light of the fact that Swortwood has no unencumbered nonexempt property upon which the defendant may execute, other than his salary and stock in the debtor, an injunction will merely preserve the status quo. In the event the plan of reorganization is not filed, or is filed but not confirmed, the defendant is no worse off at such a future date than it is now.

Finally, this Court finds the debtor established the fourth element, that the public interest is best served by issuing the injunction. The public interest is clearly best served by reorganizing chapter 11 debtors whenever possible. A reorganization case should not be summarily torpedoed by the actions of a single unsecured creditor who just happens to have a guaranty of the debtor's principal shareholder and managing officer.

For these reasons, this Court will grant the relief requested by the debtor and enter a preliminary injunction enjoining the defendant from issuing a levy or execution on its judgment against Thomas R. Swortwood, president of TRS, Inc. As such, the only issue before this Court now is the length or duration of the injunction.

This Court finds that the only equitable length of injunction is until such time as the debtor's plan is confirmed, or in the alternative, upon the conversion or dismissal of the chapter 11 case. This amount of time is long enough to ensure that Swortwood can assist the debtor in getting a plan confirmed, and at the same time, is short enough to protect the interests of the creditor.

IT IS THEREFORE, BY THE COURT, ORDERED That the creditor, Peterson Grain & Brokerage Company, Inc., is enjoined from issuing a levy or execution on its judgment against Thomas R. Swortwood, president of TRS, Inc., until such time as the debtor's plan is confirmed, or in the alternative, upon the conversion or dismissal of the chapter 11 case.