In re CCDC FINANCIAL CORPORA-TION and American Consolidated Financial Corporation, Debtors.

CCDC FINANCIAL CORPORATION,
Plaintiff,

v.

Donald C. CRAVEN, Timothy B. Matz, Kuno Laren, Mary Laren, Kumala Inc., U.S. Securities Corp., Defendants.

Bankruptcy Nos. 91–22083–11, 91–22084–11.

Adv. No. 91–6119.

United States Bankruptcy Court, D. Kansas.

Jan. 6, 1992.

John P. Bennett, Thomas S. Steele, Overland Park, Kan., for plaintiff.

Joseph M. Chiarelli, Kansas City, Mo., Peter R. Kolker, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, Washington, D.C., Jean C. Hemphill, Monteverde, Hemphill, Maschmeyer & Obert, Philadelphia, Pa., for defendants.

John E. Foulston, U.S. Trustee, Wichita, Kan.

## MEMORANDUM OPINION
## AND ORDER

BENJAMIN E. FRANKLIN, Chief Judge.

This matter comes on before the Court pursuant to the November 8, 1991 hearing on CCDC Financial Corporation's (hereinafter "CCDC") request for preliminary injunction. The debtor appeared by and through its attorneys, John P. Bennett and Thomas Steele. Clifford R. Roth, president of CCDC, also appeared. Donald C. Craven and Timothy B. Matz appeared by and through their attorneys, Joseph M. Chiarelli and Peter R. Kolker. Kuno Laren, Mary Laren, Kumala Inc., and U.S. Securities Corporation appeared by and through their attorney, Jean C. Hemphill.

### FINDINGS OF FACT

Based upon the pleadings, the record, arguments of counsel and testimony of witnesses, this Court finds as follows:

1. That on October 7, 1991, CCDC filed for relief under Chapter 11 of Title 11, United States Code.

2. That CCDC's parent corporation, American Consolidated Financial Corporation (hereinafter "AmCo"), also filed its Chapter 11 petition on October 7, 1991. Both proceedings were administratively consolidated.

3. That Clifford R. Roth (hereinafter "Roth"), is the sole officer and employee of CCDC and the sole director of AmCo.

4. That on October 18, 1991, CCDC filed its Complaint Seeking to Enjoin Continuation of Actions Extending Automatic Stay and Preliminary Injunction.

5. That on October 21, 1991, the Court entered its Order Granting Temporary Restraining Order and Setting Time for Hearing on Preliminary Injunction, as to Continuation of Action and Extension of Automatic Stay to include Roth who is not a debtor in this case.

6. CCDC, AmCo, Roth, Donald C. Craven (hereinafter "Craven"), and Timothy B. Matz (hereinafter "Matz"), are all parties to an action pending in the United States District Court for the District of Columbia, styled *CCDC Financial Corporation v. Donald B. Craven, et al.*, Civil Action Number 91–1069–LFO (hereinafter "D.C. action").

7. Kuno Laren, Mary Laren, Kumala Inc., and U.S. Securities Corporation (hereinafter collectively referred to as "Laren"), along with Roth, CCDC, and AmCo are parties to an action pending in the United States District Court for the Eastern District of Pennsylvania, styled *Kuno Laren v. Micron Products, Inc., et al.*, Civil Action Number 91–4186 (hereinafter "Micron action").

8. That a hearing was held on November 8, 1991, at which time the parties agreed to continue the temporary restraining order for sixty days, with regard to the Micron action. The debtor has also agreed to give an accounting firm access to its records. With regard to the D.C. action, the Court took the matter under advisement pending the filing of supplemental briefs and proposed findings of fact and conclusions of law by the parties. Said briefs and findings of fact and conclusions of law have now been filed.

### CONCLUSIONS OF LAW

Plaintiff is seeking to enjoin the defendants from proceeding with or attempting to obtain a judgment or decree with regard to certain legal actions, in particular the D.C. action, or from otherwise enforcing or attempting to enforce any personal obligation asserted against plaintiff's president, Roth. In other words, plaintiff is asking this Court to invoke its equitable power to extend the protection of the automatic stay provided in 11 U.S.C. § 362 to Roth, a non-debtor.

■ The Court may rely upon its equitable power under 11 U.S.C. § 105(a) to subject actions and conduct excepted from the automatic stay to specific injunctive relief. *See In re Western Real Estate Fund, Inc.*, 922 F.2d 592, 599 (10th Cir. 1990), *modified sub nom. Abel v. West*, 932 F.2d 898(10th Cir.1991). "Section 105(a) has been widely utilized in attempts to enjoin court proceedings against nondebtor

parties that allegedly will have an impact on the debtor's bankruptcy case," and such attempts require "case by case decisions as to whether any particular action excepted from the automatic stay will result in sufficient harm or interference with the bankruptcy case to warrant the issuance of a specific injunction." *Id.*, citing 2 Collier on Bankruptcy par. 105–7 to –9. This Court finds that the facts and circumstances in the present case, as set forth below, do not warrant an extension of the automatic stay to protect Roth, and the actions that plaintiff seeks to enjoin would not result in sufficient harm or interference with the bankruptcy case to warrant the issuance of a specific injunction.

■ Because the debtor is seeking an injunction, this Court is governed by the general principles applicable to injunctions. *In re TRS, Inc.*, 76 B.R. 805, 808 (Bankr. D.Kan.1987). In order to show entitlement to injunctive relief, the moving party must establish four prerequisites: (1) A substantial likelihood that the movant will eventually prevail on the merits; (2) A showing that the movant will suffer irreparable injury unless the injunction issues; (3) Proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) A showing that the injunction, if issued, would not be adverse to the public interest. *Id.* (citations omitted). "The movant's burden of proof is a heavy one and must be supported by substantial evidence, the quantum of which will necessarily vary depending on the scope and duration of the stay sought." *Id.* (citations omitted).

■ The probability of success on the merits requirement has been interpreted in the bankruptcy context as the possibility of successfully effectuating a plan of reorganization. *Id.* (citations omitted). In the present case, there was evidence that the debtor was making progress toward formulation of a plan of reorganization. Roth testified that he believed CCDC could successfully reorganize.

With regard to the second element, the Court finds that CCDC has failed to meet its heavy burden of proving that it will suffer irreparable injury unless the injunction issues. CCDC, AmCo and Roth all brought an action in the nature of a Complaint for Interpleader and for Declaratory, Injunctive and Other Relief, in the United States District Court for the District of Columbia (previously referred to as the "D.C. action"). Although the complex issues involved in the D.C. action are not presently before this Court, the Court finds it necessary to summarize the facts underlying the D.C. action in order to assess the nature of the relief plaintiff is seeking in the present action.

CCDC, AmCo and Roth were all plaintiffs in the D.C. action. The complaint named Craven, Matz and John Doe Corporations 1–10 as defendants. The complaint alleges that "John Doe Corporations 1–10 are those financial institutions or other creditors of the Limited Partnerships who have or may have an interest in, or claim to, the funds that, as described hereinafter, have been bailed to Plaintiff CCDC by Defendants Craven and Matz." A summary of these facts are set forth in the September 26, 1991 Findings of Fact and Conclusions of Law filed by the Honorable Louis F. Oberdorfer, United States District Judge. The Court takes judicial notice of Judge Oberdorfer's opinion which sets forth in relevant part:

> The complaint alleges that the defendants bailed funds to plaintiffs in their capacity as financial consultants for distribution to defendants' creditors, in order to settle defendants' multiple liabilities. It alleges in "The Need for Interpleader," that, because of the failure of the parties to reach agreement with all of the defendants' limited partners and lenders "CCDC would not continue to function as the bailee and 'middleman' for the parties." Complaint at 10, para. 28. The complaint further alleges that "[p]laintiffs have no interest in retaining the funds bailed to it by Matz, but, ... are uncertain as to whom to pay the sums bailed by Matz." *Id.* at 11, para. 30. Moreover, the complaint alleges that "Craven and Matz continue to have an

interest in the Debenture ... [and plaintiffs] are ... uncertain to whom to direct monthly payments on the Debenture." *Id,* para. 31. Plaintiffs alleged a fear that if they make payment to Craven and Matz, they may expose themselves to multiple claims by the defendants' creditors.... In their prayer for relief, plaintiffs assert that they "seek the assistance of this Court in determining the entitlement of the various Defendants to the foregoing assets ... [and] stand ready to abide by the Court's determination *and will cause said funds to be paid as directed by the Court."* Complaint at 14, para. 39 (Emphasis added in Judge Oberdorfer's opinion).

CCDC, AmCo and Roth brought the D.C. action in order to determine the rights of various parties to funds "bailed" to them, and represented to the District Court that they "stand ready to abide by the Court's determination and will cause said funds to be paid as directed by the Court." In connection with the D.C. action, Judge Oberdorfer ordered plaintiffs to deposit the sum of $953,526.81 into the Registry of the Court on or before October 7, 1991, and to deposit the further sum of $71,466.00 each month commencing November 1, 1991. Two of the named plaintiffs, CCDC and AmCo, filed for Chapter 11 relief on October 7, 1991. Roth, however, has not personally filed for bankruptcy.

The Court finds that the actions that plaintiff seeks to enjoin, more specifically enforcement of the court order requiring CCDC, AmCo and Roth to deposit the disputed funds into the Registry of the Court, would not result in sufficient harm or interference with the bankruptcy case to warrant the issuance of an injunction. Plaintiff argues that Roth needs to devote his time and effort to reorganizing the debtors, and cites cases to show that the burden of discovery on those involved in the reorganization process is often cited as a factor to consider when granting or denying a preliminary injunction. However, the defendants in the present case are only attempting to ensure that Judge Oberdorfer's order regarding the deposit of the funds into the registry of the court is carried out.

Defendants are not seeking discovery or any other time consuming activity, and in fact have voluntarily agreed not to take discovery from Roth for a 60-day period.

Plaintiff is also claiming that any payment made by Roth and the expenses incurred will subject the debtor's estate to indemnification and contribution claims and that if Roth is forced to litigate his liability to Craven and Matz for the sums claimed, such adjudication may be the basis of claims of res judicata and collateral estoppel against the estates of the debtors. Plaintiff's arguments assume that the funds which are the basis for the dispute in the D.C. action are property of the debtor's estate and that the disputed funds in the hands of the debtor are protected by the automatic stay, thereby forcing Roth to pay his personal funds into the registry of the court.

However, CCDC, AmCo and Roth have admitted in their Complaint in the D.C. action that the funds were "bailed" to them and that they "stand ready to abide by the Court's determination and will cause said funds to be paid as directed by the Court." It is hard to see how these funds which the debtor holds as "bailee" can be considered property of the debtor's estate. *See First Capital Mortgage Loan Corporation,* 917 F.2d 424, 426 (10th Cir.1990) (By definition, property held by the debtor in trust is not part of the bankruptcy estate). The Court fails to see how the deposit of funds which are not property of the estate into the registry of the court for safeguarding pending the resolution of an interpleader action *initiated by the debtor* will cause the debtor to suffer irreparable injury. *See Association of St. Croix Condominium Owners v. St. Croix Hotel Corp.,* 682 F.2d 446, 449 (3rd Cir.1982) (Whether a case is subject to the automatic stay must be determined at its inception and that determination should not change depending on the particular stage of the litigation at which the filing of the petition in bankruptcy occurs).

CCDC has also failed to show that the threatened injury to CCDC outweighs the damage the proposed injunction will cause

the opposing party. Judge Oberdorfer ordered the funds to be paid into the registry of the court "in the discretion of the court as a means of safeguarding the disputed fund and facilitating execution of judgment," and "since the present order only safeguards the disputed assets, it is appropriate to require the deposit of the largest amount in dispute." September 26, 1991 Findings of Fact and Conclusions of Law at p. 9–10. Clearly if the bailed funds are not safeguarded in the registry of the court, the defendants in the D.C. action will not be assured of the execution of any judgment they may eventually receive pursuant to the D.C. action. At the November 8, 1991 hearing, defendants presented evidence of seven separate collections actions which have been instituted against Craven and Matz by creditors which were to be paid from the funds which are in dispute in the D.C. action.

Finally, the Court finds that issuing an injunction in the present case will not best serve the public interest. The Court recognizes that it is in the public's best interest to reorganize Ch. 11 debtors whenever possible. However, CCDC, AmCo and Roth initiated the D.C. action to determine which of the named defendants were entitled to the bailed funds. The Court finds that these funds are not property of the debtor's estate that could ultimately be used to satisfy CCDC's creditors.

This Court is ever mindful that it sits as a court of equity. As such, it must assure "that substance will not give way to form, [and] that technical considerations will not prevent substantial justice from being done." *In re Anderson–Walker Industries, Inc.*, 798 F.2d 1285, 1287 (9th Cir. 1986) (citing *Pepper v. Litton*, 308 U.S. 295, 305, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939)). In the present case, equitable considerations do not warrant the issuance of a specific injunction.

IT IS THEREFORE, BY THE COURT, ORDERED That debtor's request for preliminary injunction shall be and the same is hereby DENIED.

This Memorandum shall constitute my findings of fact and conclusions of law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure.

## JUDGMENT ON DECISION DENYING DEBTOR'S REQUEST FOR PRELIMINARY INJUNCTION

This matter comes on before the Court pursuant to CCDC Financial Corporation's (hereinafter "CCDC") Complaint Seeking to Enjoin Continuation of Actions Extending Automatic Stay and Preliminary Injunction. The Honorable Benjamin E. Franklin presiding. A hearing was held on November 8, 1991, and the matter was thereafter submitted upon the briefs of the parties, and a decision having been rendered,

IT IS THEREFORE, BY THE COURT, ORDERED That debtor's request for preliminary injunction shall be and the same is hereby DENIED.