THOMPSON, Circuit Judge:
 

 John P. Stodd, Trustee in the Chapter 7 case of Anderson-Walker Industries, Inc. (the “Debtor”), appeals from the district court’s order affirming the bankruptcy court’s denial of the Trustee’s Objection to Claim. We affirm.
 

 
 *1286
 
 I
 

 FACTS AND PROCEEDINGS
 

 In April 1980, the Debtor filed a petition under Chapter 11 of the Bankruptcy Code. Lafayette Metals, Inc. (“Lafayette”) had shipped raw materials to the Debtor over a period of several years preceding the filing of the petition. On its schedules, the Debt- or listed Lafayette as the single largest creditor and indicated Lafayette was owed about $208,000. Lafayette continued to ship to the Debtor raw materials after the filing on a cash-against-delivery basis. Lafayette’s credit manager was appointed to serve on the creditors’ committee during the Debtor’s Chapter 11 case.
 

 In September 1980, the Debtor’s case was converted to a liquidation proceeding under Chapter 7. A Trustee was appointed and notice was sent to all scheduled creditors (including Lafayette) advising that to participate in dividends they were required to file a proof of claim with the bankruptcy court on or before May 6, 1981. Lafayette did not file a formal proof of claim within that period. Lafayette filed a formal proof of claim, labeled “Amended Proof of Claim” on March 3, 1983 stating, “THIS PROOF OF CLAIM AMENDS THAT DATED DECEMBER 17, 1980.”
 

 Lafayette’s December 17, 1980 “proof of claim” (sent within the six-month period ending May 6, 1981) was in the form of a letter sent to the Trustee’s attorney written by Lafayette’s credit manager in response to the attorney’s collection letter demanding $960 due the Debtor. The letter stated:
 

 This letter confirms receipt of your collection letter of December 16, 1980, requesting payment on an amount due to Anderson-Walker. As you may or may not know, the estate owes Lafayette $243,000. Our transaction with Anderson-Walker was based on a
 
 Contra
 
 basis as is noted on the invoice attached. Therefore, we would request that on the disbursement of funds from the estate, that this deduction be applied.
 

 A balance sheet indicating the amount owed by the Debtor was attached to the letter.
 

 In March 1981, the credit manager again wrote to the Trustee requesting information concerning the status of the Anderson-Walker case, stating:
 

 [P]lease respond to the following:
 

 1. Estimated amount to be disbursed to unsecured creditors after legal and accounting fees.
 

 2. Total unsecured creditors claims.
 

 3. Estimated date of payout.
 

 This information is vital as our auditors are concerned with the amount we have reserved.
 

 The Trustee’s response was handwritten on the same letter and sent by mail:
 

 There is no way I can answer any of these questions until the time for filing claims expires and all claims have been examined and resolved.
 

 In January 1983, Lafayette received a notice from the Credit Managers Association stating that “the Trustee advises that funds on hand are sufficient to pay in full the principal amount of each allowed claim.” However, the Trustee subsequently advised Lafayette that because it did not file a formal proof of claim within the filing period, Lafayette would not participate in the dividends. As noted, in March 1983 Lafayette filed a formal proof of claim, “amending” its letter of December 1980.
 

 The Trustee filed an objection to the “amended” proof of claim with the bankruptcy court. He argued that the December 1980 letter could not be considered a timely and valid proof of claim and hence the March 1983 “amendment” was invalid. The bankruptcy court denied the Trustee’s objection, finding, among other things, that “communications disclosing the nature and extent of the claim and intention to hold the Estate liable for the claim took place during the period to file claims.” The bankruptcy court subsequently denied the Trustee’s motion for reconsideration and the district court affirmed.
 

 
 *1287
 
 II
 

 STANDARD OF REVIEW
 

 Because we are in as good a position as the district court to review the bankruptcy court’s findings, we independently review the bankruptcy court’s decision.
 
 In re Acequia, Inc.,
 
 787 F.2d 1352, 1357 (9th Cir.1986). Whether the documents filed by Lafayette, considered in conjunction with Lafayette’s conduct, constitute an amendable informal proof of claim is a question of law reviewed de novo.
 
 See In re Pizza of Hawaii, Inc.,
 
 761 F.2d 1374, 1377 (9th Cir.1985)
 
 (Pizza of Hawaii); In re Sambo’s Restaurants, Inc.,
 
 754 F.2d 811, 815 (9th Cir.1985)
 
 (Sambo’s).
 

 III
 

 ANALYSIS
 

 The Trustee raises two arguments on appeal. First, he argues that Lafayette failed to satisfy the requirements set out in our cases for the filing of an amended proof of claim.
 
 See In re Franciscan Vineyards, Inc.,
 
 597 F.2d 181, 182-83 (9th Cir.1979) (per curiam)
 
 (Franciscan Vinyards), cert. denied,
 
 445 U.S. 915, 100 S.Ct. 1274, 63 L.Ed.2d 598 (1980);
 
 Sun Basin Lumber Co. v. United States,
 
 432 F.2d 48, 49-50 (9th Cir.1970) (per curiam)
 
 (Sun Bar sin).
 
 Second, he argues that even if Lafayette filed an informal claim, it did not satisfy the “misdelivery” exception of former Bankruptcy Rule 509(c) (repealed 1983 and repromulgated as Bankruptcy Rule 5005(b)).
 
 See In re Evanston Motor Co.,
 
 735 F.2d 1029, 1031-32 (7th Cir.1984)
 
 (Ev-anston Motor).
 
 We consider each contention separately.
 

 A.
 
 Informal Claim
 

 Our cases have consistently applied the “so-called rule of liberality in amendments” to creditors’ proofs of claim.
 
 Franciscan Vineyards,
 
 597 F.2d at 182
 
 (quoting In re Patterson-MacDonald Shipbuilding Co.,
 
 293 F. 190, 191 (9th Cir.1923)). For a document to constitute an informal proof of claim, it must state an explicit demand showing the nature and amount of the claim against the estate, and evidence an intent to hold the debtor liable.
 
 Sambo’s,
 
 754 F.2d at 815. The reason for this “liberal” rule is elemental. Bankruptcy courts are courts of equity, and must assure “that substance will not give way to form, [and] that technical considerations will not prevent substantial justice from being done.”
 
 Pepper v. Litton,
 
 308 U.S. 295, 305, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939);
 
 In re International Horizons, Inc.,
 
 751 F.2d 1213, 1216 (11th Cir.1985). The “liberal” rule reflects our preference for resolution on the merits, as against strict adherence to formalities.
 

 In
 
 Sun Basin,
 
 432 F.2d 48, a secured creditor did not file a formal proof of claim within the statutory period, but did file an objection to the trustee’s petition to sell the property subject to his lien. We held that the creditor’s objection, filed within the statutory period, “fairly reflectfed]” the existence of a claim against the bankrupt, and hence was a valid and amendable informal proof of claim.
 
 Id.
 
 at 49. We stated: “Here the intention to collect from the estate was implicit in the recitations that the debt existed, that it was past due, that [the creditor] proposed to realize on the security, that the amount due exceeded the security’s market value, and that the bankrupt was obligated to pay the anticipated deficiency.”
 
 Id.
 

 In
 
 Franciscan Vineyards,
 
 597 F.2d 181, we followed
 
 Sun Basin
 
 and ruled for the creditor on facts similar to this case. There, the bankrupt owed the County of Napa (“County”) tax arrearages. The County did not file a formal proof of claim within the statutory period, but did send a letter to the Trustee enclosing two tax bills and stating: “The assessments are against the old Franciscan Vineyards, and we understand you are handling their affairs.”
 
 Id.
 
 at 182 n. 1. The County argued that the letter constituted an amendable informal proof of claim. We emphasized that a creditor need not show that the document was a proof of claim. Rather, the creditor
 
 *1288
 
 need only show “that a demand [was] made against the estate, and must show the creditor’s intention to hold the estate liable.”
 
 Id.
 
 at 183
 
 (quoting In re Hotel St. James Co.,
 
 65 F.2d 82, 83 (9th Cir.1933)). We also stated that the Trustee must read and “reasonably construe” the documents sent by a creditor.
 
 Id.
 
 We held that the County’s letter sufficiently described the debt and implicitly expressed an intent to collect from the bankrupt.
 

 Lafayette’s letter of December 17th falls within
 
 Sun Basin
 
 and
 
 Franciscan Vineyards.
 
 The letter unambiguously states the existence and amount of the debt, that the Debtor owed this sum to Lafayette, and that it had not been paid. Lafayette attached to the letter and made reference to an invoice describing the debt. As in
 
 Franciscan Vineyards,
 
 the letter here contains much of the pertinent information required to be filed in a formal proof of claim. 597 F.2d at 182.
 
 See also
 
 11 U.S.C. § 501; Bankr.R. 301(a) (repealed 1983). Further, the Trustee was under a duty to “reasonably construe” Lafayette’s communication.
 
 Id.
 
 at 183. The Trustee knew that Lafayette was the Debtor's single largest creditor, that Lafayette was concerned with the status of its claim and the date that payment would be forthcoming, and that Lafayette had taken an active and continuing role in the Debtor’s bankruptcy and business. Lafayette’s active participation in the bankruptcy court proceedings may be considered in determining whether its December 17th letter was an amendable informal proof of claim.
 
 Pizza of Hawaii,
 
 761 F.2d at 1380. Lafayette’s letter, “reasonably construed” in light of these facts, strongly implies Lafayette’s intention to collect on the debt. We agree with the bankruptcy court that the December 17th letter was an amendable informal proof of claim.
 
 See Sambo’s,
 
 754 F.2d at 816 (discussing
 
 Franciscan Vineyards,
 
 and noting that letter sent by that claimant to debtor’s attorney would constitute a valid informal claim).
 

 B.
 
 Bankruptcy Rule 509(c)
 

 We next consider the Trustee’s argument that Lafayette was required to prove it directed the December 17th letter to the bankruptcy court but instead mistakenly delivered it to the Trustee. The Trustee relies on former Bankruptcy Rule 509(c), which provides:
 

 A paper intended to be filed but erroneously delivered to the trustee or receiver, or the attorney for either of them, or to the district judge, referee, or clerk of the district court, shall, after the date of its receipt has been noted thereon, be transmitted forthwith to the proper person. In the interest of justice the court may order that the paper shall be deemed filed as of the date of its original delivery.
 

 Bankr.R. 509(c) (repealed 1983, current version at 5005(b)).
 

 We recognize that Rule 509(c) might be construed to support the Trustee’s interpretation.
 
 See Evanston Motor,
 
 735 F.2d at 1031-32. But the language of the Rule does not dictate the Trustee’s construction. The Rule does not state that the creditor (or other sender) must direct the paper to the bankruptcy court but mistakenly send it to a trustee or another official. Rather, the Rule requires an “in-ten[t]” to file a paper, and an “eroneous[ ] delivery]” to an official. Bankr.R. 509(c). As we interpret this language, the Rule only requires that the creditor intend that the paper will become a part of the bankruptcy court proceedings and receive some official action. A creditor who sends a paper to a court-appointed trustee or other official, under circumstances that the sender can be said to have acted with an expectation that it receive an official response, has done so with an intent that the paper is being “filed.” The sender is in error, however, because the paper should have been “filed” with the bankruptcy court. The sender has thus “intended to ... [file] but erroneously delivered [the paper] to the trustee.”
 
 Id.
 
 In the “interests of justice,” a bankruptcy court may then “deem” that the paper has been filed on time.
 
 Id.
 
 Con
 
 *1289
 
 strued in this manner, Rule 509(c) is fully consistent with our prior case-law regarding the filing of amended proofs of claim.
 
 See Sambo’s,
 
 754 F.2d at 816 (reaffirming the continuing vitality of
 
 Franciscan Vineyards).
 

 The history of Rule 509(c) substantiates our construction of this Rule. Rule 509(c) was preceded by General Order 21(1), which provided that “[p]roofs of claim received by any trustee shall be delivered to the referee to whom the case is referred.”
 
 See
 
 4B J. Moore & L. King,
 
 Collier on Bankruptcy
 
 18-21, at 1535-36 (14th ed. 1978) [hereinafter
 
 Collier
 
 ]. Neither General Order 21(1) nor the case-law interpreting it required that the creditor have filed the proof of claim under a misapprehension that it had been filed with the bankruptcy court.
 
 See
 
 3 & 12
 
 Collier, supra
 
 ¶ 57.11, at 202-17, & H 509.11, at 5-68 to 5-71.
 
 See also Franciscan Vineyards,
 
 597 F.2d at 183 (discussing case-law). The drafters of Rule 509(c) did not intend that it would alter the former practices regarding amended proofs of claim. Although Rule 509(c) applies to all “papers,” the Advisory Committee (which drafted the Rule) expressly stated that the Rule was intended as “an extension of the rule of practice prescribed in the last sentence of General Order 21(1) respecting proofs of claim delivered to the trustee. See 3 Collier ¶ 57.10 (1961).”
 
 See
 
 Bankr.R. 509(c) Advisory Committee Note (repealed 1983). The Advisory Committee’s reference to the prior practices under former General Order 21(1) belies any intent to adopt the construction suggested by the Trustee.
 
 See
 
 3
 
 Collier, supra
 
 ¶157.11, at 202-17 (cited by the Advisory Committee; discussing rules governing filing of amended proofs of claim, consistent with our holdings in
 
 Franciscan Vineyards
 
 and its progeny).
 

 We must therefore reject the Trustee’s interpretation of Rule 509(c) as inconsistent with our case law and a fair reading of the Rule and its history.
 

 AFFIRMED.