## In re STAMFORD COLOR PHOTO, INC., Debtor.

### Maxine GAUDIO, Movant,

v.

### STAMFORD COLOR PHOTO, INC., Respondent.

Bankruptcy No. 5–89–00056.

United States Bankruptcy Court, D. Connecticut.

Oct. 11, 1989.

Barbara L. Hankin, Zeisler & Zeisler, P.C., Bridgeport, Conn., for movant.

Ira B. Charmoy, Charmoy & Kanasky, Bridgeport, Conn., for respondent.

## MEMORANDUM AND ORDER ON MOTION TO DISMISS CHAPTER 11 CASE

ALAN H.W. SHIFF, Bankruptcy Judge.

## BACKGROUND

### A. State Court Proceedings

On January 14, 1985, Maxine Gaudio (the "movant") commenced a marriage dissolution action against Arthur Gaudio ("Gaudio"). *Maxine Gaudio v. Arthur Gaudio*, No. FA 85 0074676 S (Super.Ct., J.D. of Stamford/Norwalk). At that time Gaudio's principal asset was 100% of the shares of the debtor, and the debtor's principal asset was a building in Stamford, Connecticut (the "Stamford building"). On October 27, 1986, Gaudio sold his shares in the debtor to Frank Eannelli,[1] who was subsequently made a party defendant in the divorce action on a fraudulent conveyance count relating to that stock transfer. In early December, 1987, the movant commenced a separate fraudulent conveyance action in the state court against Gaudio, Eannelli, and the debtor, *Maxine Gaudio v. Arthur Gaudio*, No. CV–870091239 S (Super.Ct., J.D. of Stamford/Norwalk), and on December 4, she filed a *lis pendens* on the Stamford building.

On March 7, 1988, the state court, on the stipulation of the parties to the fraudulent conveyance action, entered an order that the mortgages from and proceeds of the anticipated sale of the Stamford building by the debtor to the Shelter for the Homeless, Inc. (the "Shelter"), were to be held in escrow by the movant's attorney and another attorney to satisfy the movant's

---

1. A review of the documents attached to the movant's pretrial memorandum discloses what appears to be different signatures for and spellings of Eannelli, compare Exhibit A, the contract for the sale of stock, with Exhibits O and N, a civil complaint by Eannelli against Gaudio and an amendment of the debtor's schedules, respectively, which is consistent with the movant's suspicion that the corporate resolution to file this case, *see* Local Bankruptcy Rule 10, may have been forged.

claims in the dissolution action. On May 31, the debtor sold the Stamford building to the Shelter for $700,000.00, of which $125,000.00 was used to pay taxes and costs. The Shelter gave the debtor two mortgages, one for $450,000.00, the other for $125,000.00. The debtor did not give the mortgages to the escrow agents, and, on June 14, was again ordered by the state court to do so. In defiance of that order, on June 20, Paul Daddona, allegedly acting as an officer of the debtor, demanded and received payment of the $125,000.00 mortgage from the Shelter.

On November 28, 1988, the state court ruled in favor of the movant in the fraudulent conveyance count of the dissolution action, and Eannelli was ordered to transfer the stock to Gaudio who in turn was ordered to pay the movant $215,000.00 plus $25,000.00 for attorneys' fees.[2] Eannelli has appealed that order.

### B. Bankruptcy Court Proceedings

On January 17, 1989, Daddona, allegedly acting for the debtor, filed a petition under chapter 11. The movant and her divorce attorney were scheduled as the debtor's sole creditors whose claims were listed as unsecured, disputed, and contingent. The debtor's only scheduled assets were the $450,000.00 mortgage from the Shelter and $4,025.36 in a checking account. May 17, 1989 was set as the deadline for filing proofs of claim. *See* Bankruptcy Rule 3003(c)(3).

On January 26, 1989, the United States trustee filed a motion under Code § 1112(b) to dismiss or convert this case to a case under chapter 7, as to which the movant filed a March 9 supporting memorandum of law (the "Memorandum"). On March 20, the debtor filed an amended application to employ an attorney, to which the U.S. trustee objected. The motion to dismiss was deferred pending a decision on the U.S. trustee's objection, which, on April 5, 1989, was overruled. *In re Stamford Color Photo, Inc.*, 98 B.R. 135 (Bankr.D.Conn. 1989). On April 13, the U.S. trustee abandoned its motion to dismiss. On May 16, the debtor filed an amended schedule listing four new creditors who have *de minimis* claims. On August 21, 1989, the movant filed the instant motion to dismiss, claiming that the petition was filed in bad faith.

### DISCUSSION

### A. Standing

The debtor argues that since the movant failed to timely file a proof of claim, she is not a creditor of the estate and therefore lacks standing to move for dismissal. The debtor's contention is a nonsequitur. Even assuming that "party in interest", which is not defined by the Code, is limited to a debtor and creditors, the movant's status fits within that category.[3] Bankruptcy Rule 3003(c)(2)[4] does not extinguish a creditor's status, it merely eliminates a creditor's right to a distribution if the creditor has not timely filed a proof of claim. Thus, even if the movant failed to timely file a proof of claim and was not entitled to a distribution, she would nonetheless have a "right to payment", *see* § 101(4)(A), upon termination of the automatic stay under § 362(c) if her claim would not be discharged under § 1141(d)(2). As noted, the claim here arises out of an order of a state court in a marriage dissolution action and may well be excepted from discharge under

---

**2.** The status of the mortgages is not clear from the pretrial memoranda.

**3.** In general, a party in interest is either a debtor or a creditor. *See Roslyn Sav. Bank v. Comcoach Corp. (In re Comcoach Corp.)*, 698 F.2d 571, 573 (2d Cir.1983). A creditor is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor...." 11 U.S.C. § 101(9)(A). A claim is a "right to payment...." 11 U.S.C. § 101(4)(A).

**4.** Bankruptcy Rule 3003(c)(2) provides:

Any creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution.

§ 523(a)(5). Indeed even if the claim would not be excepted from discharge under an 1141(d) analysis, the creditor's claim would still have viability until it is discharged. *See Turner v. United States (In re G.S. Omni Corp.)*, 835 F.2d 1317, 1318–19 (10th Cir.1987).

By the debtor's logic, a creditor who claims that the petition was improperly filed and seeks its dismissal must timely file a proof of claim asserting a right to payment from the estate or lose standing to move under § 1112(b). It is doubtful that Congress intended to orchestrate such a redundant effort.

■ Apart from that analysis, the record demonstrates that the movant's Memorandum satisfied the so-called informal proof of claim doctrine and therefore comes within the purview of Rule 3003(c)(2). As this court has previously observed, a document need not be styled a proof of claim or filed in the form of a claim if it fulfills the purposes for which the filing of a proof of claim is required, i.e. a demand which shows the nature and amount of the claim against the estate. *Associated Fin. Serv. Co. of Mass., Inc. v. Pabis (In re Pabis)*, 62 B.R. 633, 636 (Bankr.D.Conn.1986). Other courts have required an additional element, i.e. evidence of an intent to hold the debtor liable, but, contrary to the debtor's assertion, any such intent need not be explicit. *Anderson–Walker Indus., Inc. v. Lafayette Metals, Inc. (In re Anderson–Walker Indus., Inc.)*, 798 F.2d 1285, 1287 (9th Cir.1986); *Biscayne 21 Condominium Ass'n, Inc. v. South Atl. Fin. Corp. (In re South Atl. Fin. Corp.)*, 767 F.2d 814, 819 (11th Cir. 1985), *cert. denied*, 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986); *In re W.T. Grant Co.*, 53 B.R. 417, 421 (Bankr.S.D.N.Y.1985).

The movant's Memorandum, filed before the May 17, 1989 bar date, includes a long recitation of overlapping facts in the two pending state court actions, from which the following can be distilled: (1) as a consequence of the March 7 and June 14, 1988 state court orders, the mortgages and cash proceeds from the sale of the Stamford building were to be set aside to satisfy the movant's claims in the dissolution proceeding; (2) as a consequence of the November 28, 1988 state court order, Gaudio became the owner of 100% of the shares of the debtor; and (3) as a further consequence of the November 28 order, Gaudio became indebted to the movant in the amount of $240,000.00. It is implicit in the Memorandum that the movant intends to recover that claim from the debtor. *See Pizza of Haw., Inc. v. Shakey's, Inc. (Matter of Pizza of Haw., Inc.)*, 761 F.2d 1374, 1381 (9th Cir.1985) (holding that a motion for relief from the automatic stay clearly evidenced the movant's desire to hold the estate liable).

**B. Dismissal for Bad Faith Filing**

■ Code § 1112(b) provides in part:

[O]n request of a party in interest ..., and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause....

Bankruptcy courts have universally held that the promotion of individual interests in a manner not intended by Congress is an abuse of the jurisdiction of the bankruptcy court. *Matter of Mogul*, 17 B.R. 680, 681 (Bankr.M.D.Fla.1982) ("It has been long recognized that one who invokes the protective provisions of the bankruptcy laws must do so in order to accomplish and further the expressed legislative aim of the particular Chapter and not for any other purpose."). It is therefore well settled that the requirement that a chapter 11 petition be filed in good faith is within the purview of § 1112(b). *E.g., Natural Land Corp. v. Baker Farms, Inc. (In re Natural Land Corp.)*, 825 F.2d 296, 297 (11th Cir.1987); *Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1071–72 (5th Cir.1986); *In re HBA East, Inc.*, 87 B.R. 248, 258 (Bankr.E.D.N.Y.1988).

■ Bad faith filings under chapter 11 are generally not exposed by any direct evidence of ulterior motives. As the court

in *Sun Bank and Trust Co. of St. Petersburg v. Rickey (Matter of Rickey)*, 8 B.R. 860, 863 (Bankr.M.D.Fla.1981), held in the context of a § 523(a)(2)(B) fraudulent intent analysis:

> One cannot x-ray the mental processes of a debtor and direct proof of intent to deceive is well-nigh impossible. However, it is not necessary to furnish direct proof and the fraudulent intent may be inferred from the surrounding circumstances.

Factors which courts have relied upon in making a finding of bad faith include: (1) the debtor has few or no unsecured creditors; (2) pre-petition conduct of the debtor was improper; (3) the petition allows the debtor to evade court orders; (4) the debtor has no ongoing business or employees; (5) there is no reasonable possibility of reorganization; (6) the debtor has little or no cash flow or income; (7) the case essentially involves the resolution of a two-party dispute which can be resolved in the state court; and (8) the debtor has only one asset. *Phoenix Piccadilly, Ltd. v. Life Ins. Co. of Va. (In re Phoenix Piccadilly, Ltd.)*, 849 F.2d 1393, 1394–95 (11th Cir. 1988); *Matter of Grieshop*, 63 B.R. 657, 663 (N.D.Ind.1986); *In re HBA East, Inc., supra*, 87 B.R. at 259 (Bankr.E.D.N.Y.); *Mauna Lani Resort, Inc. v. Endrex Investments, Inc. (In re Endrex Investments, Inc.)*, 84 B.R. 207, 210–11 (Bankr.D. Colo.1988).

For the reasons that follow, I find that the petition was filed in bad faith. The March 7 and June 14, 1988 state court orders were intended to preserve the proceeds of the sale of the Stamford building, so that they could satisfy any allowed claim of the movant in her dissolution action. On November 28, 1988, Eannelli was ordered to return the debtor's stock to Gaudio, and Gaudio was ordered to pay the movant $240,000.00. Thus, by implication, the thrust of the state court's order was to make the debtor Gaudio's alter ego. The debtor, through its principals, flaunted the March 7 and June 14 orders, and it is apparent that one of the primary purposes of the petition was to flaunt the November 28, 1988 state court order. This chapter 11 petition was filed in an attempt to have this court undo what has already been done by the state court. Moreover, the debtor has no business operations or income, and either one or no employees. The movant, while possibly not the only creditor, unquestionably holds a secured claim which dwarfs all others.

## CONCLUSION

For the foregoing reasons, I conclude that the movant has standing to seek the dismissal of this case under § 1112(b), and that the movant has sustained the burden of proving that the petition was filed in bad faith. IT IS SO ORDERED.