In re WESTERN STATES DRYWALL, INC., Debtor.

Bernie R. RAKOZY, Trustee, Plaintiff,

v.

DIVERSIFIED TURNKEY CONSTRUCTION CO., and United States of America, Defendants.

Bankruptcy No. 91–01258.
Adv. No. 92–6055.

United States Bankruptcy Court,
D. Idaho.

Sept. 29, 1992.

Jed W. Manwaring, Evans, Keane, Koontz, Boyd, Keane, Koontz, Boyd, Simko & Ripley, Boise, Idaho, for plaintiff.

Andrea M. Pogue, Asst. U.S. Atty., D. Idaho, Boise, Idaho, and Lauren Soloff, U.S. Dept. of Labor, Washington, D.C., for defendant U.S.

Laura Burri, Ringert, Clark, Chartered, Boise, Idaho, for Western States Drywall, Inc.

## MEMORANDUM OF DECISION

ALFRED C. HAGAN, Chief Judge.

The chapter 7 trustee of Western States Drywall, Inc., ("debtor"), has filed this adversary proceeding against Diversified Turnkey Construction Co. ("Diversified") and the United States for money allegedly due the debtor under a construction contract. The United States has moved to dismiss the debtor's action against it on the basis of sovereign immunity.

The following is a summary of the allegations of the plaintiff's complaint.

Diversified was the general contractor for construction of family units in Miramar and Coronado, California, with the U.S. Navy and/or the Department of Labor. On October 24, 1989, Diversified entered into two subcontracts with the debtor to provide drywall installation and painting on 440 family housing units, for a total contract price of $1,776,000 plus adjustments. Debtor substantially completed this work by August, 1990.

During the summer of 1990, an investigator for the Navy, Gloria Cutler ("Cutler"), allegedly concluded, wrongfully and in bad faith, the debtor was violating the Davis–Bacon Act, 40 U.S.C. § 276a *et seq.*, by failing to pay its employees the amounts required by law. Approximately $381,000 in progress payments were withheld from Diversified by the Navy as a result, including $223,224.84 due to the debtor under the two subcontracts.[1] The United States, through Cutler, in bad faith and without substantial justification, demanded that the debtor pay all of

---

**1.** Section 276a–2 provides in its pertinent part: The Comptroller General of the United States is authorized and directed to pay directly to the laborers and mechanics from any accrued payments withheld under the terms of the

contract any wages found to be due laborers and mechanics pursuant to sections 276a to 276a–5 of this title....

40 U.S.C. § 276a–2.

its employees for 40–hour work weeks whether or not the employees in fact worked such 40–hour weeks.

The debtor and Diversified agreed that Diversified would complete the project, and deduct the actual and necessary costs of completion from the money being held by the United States. After the debtor filed for relief in this Court, the debtor, the trustee, and Diversified agreed that the amount of Diversified's back charge for completion of the subcontracts is $60,000. Diversified failed and/or was unable to pay the sums due the debtor itself, however. The United States' continued bad faith refusal to pay the money being withheld forced the debtor into filing for relief under the bankruptcy laws.

The trustee further alleges Cutler aided, abetted, and encouraged former employees of the bankrupt to file falsified proofs of claim in the debtor's bankruptcy. Cutler, or someone under her direction and control, prepared and filed 12 falsified proofs of claim with the Court, and also submitted a proof of claim 12 times on behalf of the United States setting out all amounts allegedly due former employees of the debtor. These alleged proofs of claim were in the form of a letter, addressed to the United States Bankruptcy Court, District of Idaho, and contained an attachment listing all of the employees and amounts allegedly due under the Davis–Bacon Act.

The trustee objected to 15 proofs of claim filed by former employees for the alleged underpayments. After notice and a hearing, this Court denied all of the claims, finding that the employees were attempting to recover from the estate wages they had not earned.[2]

Based on the above allegations, the trustee seeks judgment against the United States and Diversified for $163,224.84

($223,224.84 minus the $60,000 back charge by Diversified). The trustee also seeks an order of turnover against the United States for the funds allegedly held for the payment of employees. The trustee also requests costs, attorney's fees, and sanctions against the United States for its alleged bad faith, pursuant to 28 U.S.C. § 2412.

In its answer to the complaint, Diversified cross-claimed against the United States for the withheld funds.

The United States moved to dismiss the debtor's complaint against it, on the grounds there has been no waiver of sovereign immunity. The trustee argues the documentation submitted by the United States constitutes an informal proof of claim, thus waiving sovereign immunity under section 106(a). The United States argues section 106(a) has not been met on two grounds: First, the United States has not filed a proof of claim against the debtor; and second, even if an informal proof of claim has been submitted, the funds withheld by the United States are not property of the estate sufficient to meet the requirements of section 106(a).

## ISSUE

■ The issue of whether the United States has waived its sovereign immunity is a question of subject matter jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir.1988), *cert. denied*, 489 U.S. 1052, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989). Consequently, this is a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, made applicable here by Rule 7012 of the Federal Rules of Bankruptcy Procedure.

There are two basic forms of challenge to subject matter jurisdiction, and as a result two different possible standards to be applied.

"If [a motion to dismiss for lack of subject matter jurisdiction] simply chal-

---

**2.** The trustee characterizes the Court's order as finding that "no employees were owed any back wages as a result of the Debtor's subcontracts on the Miramar and Coronado projects." First Amended Complaint, ¶ 15. Because the funds withheld by the United States are to be paid to the former employees in compensation for the allegedly unpaid wages, the trustee alleges he is entitled to turnover of the assets. This probably mischaracterizes the holding, but because the issue is not presented here it is not addressed. Regardless, this allegation of the complaint does not otherwise affect the conclusion of the present motion.

lenges the sufficiency of the allegations of subject matter jurisdiction, then the pleading's contents are taken as true for purposes of the motion. However, if it challenges the actual existence of subject matter jurisdiction, then the pleading's allegations are merely evidence on the issue. Since the party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction, regardless of the pleading's allegations, the courts have held that the pleader must establish jurisdiction with evidence from other sources, such as affidavits or depositions. The general rule, therefore, is that a pleading's allegations of jurisdiction are taken as true unless denied or controverted by the movant. Thus, if the movant fails to contradict the pleader's allegations of subject matter jurisdiction in his motion to dismiss [for lack of subject matter jurisdiction], then he is presumed to be challenging the pleading's sufficiency under Rule 8(a)(1), and the allegations of the pleading pertaining to jurisdiction are taken as true. But if the movant, either in his motion or in any supporting materials, denies or controverts the pleader's allegations of jurisdiction, then he is deemed to be challenging the actual existence of subject matter jurisdiction, and the allegations of the complaint are not controlling."

*Trentacosta v. Frontier Pacific Aircraft Indus., Inc.,* 813 F.2d 1553, 1558–59 (9th Cir.1987) (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1363, at 653–54 (1969) (footnotes omitted)).

 The motion at issue here is a "speaking motion," in which the United States has challenged the actual existence of subject matter jurisdiction. Where such is the case, and jurisdiction depends upon facts that also go to the merits of the case,

the applicable standard is that utilized in a motion for summary judgment, as opposed to the standard utilized in a motion to dismiss for failure to state a claim. *Trentacosta, supra,* 813 F.2d at 1558. "Under this standard, 'the moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *Id.* (quoting *Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir.1983)). "A moving party is entitled to prevail as a matter of law if the nonmoving party fails 'to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.'" *Trentacosta, supra,* 813 F.2d at 1558 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). The nonmoving party must come forward with evidence outside the pleadings to support jurisdiction. *Trentacosta, supra,* 813 F.2d at 1558–59.

Two factual allegations are denied or controverted by the United States in its motion. The first is that Cutler did not have the authority to file a proof of claim. The second is implied in the government's argument that the withheld funds are not property of the estate because they are withheld for the benefit of unpaid employees; that is, the government properly withheld the funds because of the debtor's nonpayment of wages. The remainder of the government's arguments turn not upon the existence or nonexistence of jurisdictional facts, but instead upon the legal significance of those facts.

## DISCUSSION

Section 106 provides for a limited waiver of sovereign immunity in several situations.[3] The trustee argues the government

---

**3.** Section 106 provides in its entirety:

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

(b) There shall be offset against an allowed claim or interest of a governmental unit any

claim against such governmental unit that is property of the estate.

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and

has waived its sovereign immunity under section 106(a) by sending the letter to the court regarding the amounts withheld under the Davis–Bacon Act. The Cutler letter, contends the trustee, constitutes an informal proof of claim sufficient to fall within the waiver of sovereign immunity provided for in section 106(a), permitting the trustee's counterclaim against the government.[4]

■ It is concluded the actions of the United States have waived its sovereign immunity under the provisions of section 106(a). The language of that section is quite plain in its requirements to find a waiver of sovereign immunity: (1) there must be a claim against a governmental unit; (2) such claim must be property of the estate of the debtor; and (3) the governmental unit must have a claim against the debtor that arises from the same transaction or occurrence. 11 U.S.C. § 106(a). *Cf. Town & Country Home Nursing Services, Inc. v. Blue Cross of California (In re Town & Country Home Nursing Services, Inc.),* 112 B.R. 329, 332–33 (9th Cir. BAP 1990), *aff'd sub nom.,* 963 F.2d 1146 (9th Cir.1992) (utilizing a two point test); *Gower v. Farmers Home Administration (In re Davis),* 20 B.R. 519, 521 (Bankr. M.D.Ga.1982) (utilizing three point test differently formulated).

With regard to the elements of subsection (a), the parties have controverted three issues: (1) the existence of a "claim" by the United States against the debtor, (2) the existence of a "claim" by the debtor against the United States, and (3) the existence of the debtor's interest in the fund as "property of the estate." The United States is clearly a "governmental unit" within the meaning of the Bankruptcy Code,[5] and both the United States' claim against the debtor and the debtor's claim against the United States arise out of the same transaction or occurrence.

■ It is concluded no proof of claim is required by the language of section 106(a) for sovereign immunity to be waived, and that the actions of the United States have sufficiently affirmed the existence of a claim to waive its immunity. Second, the Court additionally finds the United States has filed an informal proof of claim against the debtor, waiving its sovereign immunity. Third, the debtor has a claim against the United States, sufficient to meet the requirements of section 106(a). Fourth, the claim of the debtor against the United States is "property of the estate" as required by section 106(a).

A. The Actions of the United States Have Affirmed the Existence of A "Claim" Against the Debtor Sufficient to Waive Sovereign Immunity Under Section 106(a).

■ With regard to the first issue, the United States, as noted previously, appears to concede a proof of claim would waive sovereign immunity under section 106(a), but argues that the Cutler letter submitted to the Court does not meet the requirements for an informal proof of claim. However, the plain language of section 106(a) does not refer to "proofs of claim," but to "claims." "By the clear terms of the statute the waiver is triggered by the existence of the government's 'claim,' not the filing of a proof of claim." *Town & Country, supra,* 112 B.R. at 333.

By its terms, however, subsection (a) refers only to a "claim" and does not dif-

---

(2) a determination by the court of an issue arising under such a provision binds governmental units.
11 U.S.C. § 106.

**4.** The United States cites to the case of *United States v. Nordic Village, Inc.,* —— U.S. ——, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992), in support of its arguments that sovereign immunity is not waived in an action seeking monetary recovery in bankruptcy. While *Nordic Village* contains dicta suggesting that section 106(a) requires the filing of a proof of claim, —— U.S. at ——, 112

S.Ct. at 1015, the issue before the Court was the scope of section 106(c). Thus, the present issue regarding the proper reading of section 106(a) was not before that Court. *See Sullivan v. Town & Country Home Nursing Services, Inc. (In re Town & Country Home Nursing Services, Inc.),* 963 F.2d 1146, 1152 n. 2 (9th Cir.1992).

**5.** 11 U.S.C. § 101(27) ("governmental unit" means "United States" or "department, agency, or instrumentality of the United States").

ferentiate between those that are filed and those that are not. Although subsection (b) refers to a government's "allowed" claims—claims that have been filed and to which no objection has been raised—subsection (a) makes no such reference. This distinction indicates that subsection (a) waivers do not necessarily require the filing of a formal proof of claim.

*Sullivan v. Town & Country Home Nursing Services, Inc. (In re Town & Country Home Nursing Services, Inc.),* 963 F.2d 1146, 1150 (9th Cir.1992).

A "claim" is defined by the Bankruptcy Code as a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured....

11 U.S.C. § 101(5)(A). The United States has asserted, and continues to assert, that it is entitled to retain these funds for the benefit of the allegedly unpaid employees, and due to the debtor's alleged breach of contract by violating the Davis–Bacon Act. The United States has more than an alleged right to payment; it has actively, affirmatively, and successfully collected on the asserted obligation.

The recent holding of the Ninth Circuit supports this interpretation. In *Sullivan v. Town & Country Home Nursing Services, Inc. (In re Town & Country Home Nursing Services, Inc.),* 963 F.2d 1146 (9th Cir.1992), the government had offset amounts owed to the debtor against a prepetition debt owed by the debtor to the government. These offsets occurred both prepetition and postpetition. The court concluded the government was "put in the precarious position of arguing that whereas the mere filing of a claim is sufficient to waive sovereign immunity, the actual receipt of payment on a claim not formally filed produces no such waiver." 963 F.2d at 1153.

■ While the court in *Town & Country* based its decision in part on the fact the

government had engaged in postpetition offsets, this does not invalidate the application of that reasoning here. Just as the language of section 106(a) does not distinguish between claims that are filed and claims that are not, neither does it distinguish between prepetition government action to collect on claims and postpetition government action to collect on claims. *Town & Country* did not decide whether a government entity that merely possesses a claim but takes no action to enforce it has waived its sovereign immunity, nor does this Court so hold.[6] Rather, where a governmental unit engages in affirmative action to withhold amounts due because of alleged contractual violations, not on its own behalf but on behalf of the true creditors who will receive payment from the funds postpetition, it has affirmed the existence of a "claim" sufficient to waive its sovereign immunity under section 106(a).

■ Drawing a distinction between prepetition and postpetition actions to collect on claims would encourage the government to engage in a "race of diligence" in derogation of the purposes of bankruptcy law. Not only would governmental entities rush to obtain or withhold funds from parties against whom the government had claims, lessening the estate for other creditors not entitled to the special protections of sovereign immunity, but such a race would tend to force parties into bankruptcy, as the debtor has alleged here.

B. The Cutler Letter, Reasonably Construed in Light of the Circumstances, Constitutes an Informal Proof of Claim Against the Debtor Waiving Sovereign Immunity Under 106(a).

■ Moreover, it is found the United States has submitted an informal proof of claim sufficient to waive its sovereign immunity. An informal proof of claim "must state an explicit demand showing the nature and amount of the claim against the estate, and evidence an intent to hold the debtor liable." *Anderson–Walker Indus., Inc. v. Lafayette Metals, Inc. (In re*

---

**6.** *See Town & Country, supra,* 963 F.2d at 1152.

*Anderson–Walker Indus., Inc.),* 798 F.2d 1285, 1287 (9th Cir.1986) (citing *In re Sambo's Restaurants, Inc.,* 754 F.2d 811, 815 (9th Cir.1985)). The statement of the debt, together with the intent to hold the estate liable, must appear when the document submitted and the surrounding factual circumstances are "reasonably construed." *Anderson–Walker, supra,* 798 F.2d at 1288. The Court must therefore examine not only the text of the Cutler letter, but the circumstances surrounding it; in this instance, the extent of the government's claimed interest in the funds, and the actions of the government postpetition.

The United States does not argue the money belongs to it, but rather that the money belongs to the employees. The situation, therefore, is more analogous to that of a bailment or trust, than of ownership in fee simple. Indeed, the United States has argued that the funds are held in statutory trust for the benefit of the employees. Despite this status, and despite the government's asserted position the employees are to be paid from the withheld funds, the government provided aid to the employees to file claims against the bankruptcy estate. While not admitting the scope of the trustee's allegations involving assistance to the employees, the United States has admitted it provided information to the employees with knowledge the employees would use that information to file proofs of claim against the debtor.[7]

In this light, the government's participation assumes greater significance. The text of the letter, from the Department of the Navy Naval Facilities Engineering Command and signed by Gloria Cutler, Labor Advisor, is set forth below.[8] This letter was sent to the Court, together with a proof of claim form containing the case caption and an attachment listing the amounts allegedly owed by the debtor to its employees.[9] While the letter submitted by Cutler, standing alone, is not construed to constitute an informal proof of claim, the combination of the minimal interest of the United States in the funds, together with its assistance to the parties who the government claims are in fact entitled to the property, demonstrates the United States has filed an informal proof of claim. The interest of the United States in the withheld funds is the right to retain such

---

7. In an affidavit submitted by the United States, Gloria Cutler states:

> 3. I first became involved with the Bankruptcy Court proceedings when I was approached by some of the employees of Western States Drywall, who had received Proof of Claim forms from the Bankruptcy Court, to help them in providing the information required by the court forms. I was approached because they knew me from the labor interviews I conducted during the investigation. The employees needed the amount of backwages [sic] owed for the claim amount and, consistent with established policy, that amount was not disclosed to them during the investigation. I assisted those individuals that came to me for help by giving them backwage information. . . .

Affidavit of Gloria Cutler, at ¶ 3.

8. The text of the letter is as follows:

"To Whom It May Concern:

"Subject: WESTERN STATES DRYWALL, INC., U.S. BANKRUPTCY COURT—DISTRICT OF IDAHO CASE NO. 91–01258, NAVY CONTRACT N62474-85-C-5490; 446 FAMILY HOUSING UNITS—MIRAMAR/CORONADO, CALIFORNIA (DIVERSIFIED TURNKEY CONSTRUCTION—PRIME)

"Western States Drywall performed as a subcontractor under a Navy construction contract subject to the Labor Standards Provisions of Title 29 Part 5 of the Code of Federal Regulations.

"Allegations of violations of the Davis–Bacon Act and Contract Work Hours Safety Standards Act resulted in an official investigation into the paying practices of Western States Drywall. Investigation file has been forwarded to the U.S. Department of Labor for further action.

"Attached listing represents the underpayment due Western States Drywall's employees. Funds equal to the underpayment were withheld from prime contractor and transferred to the U.S. General Accounting Office pending resolution of the matter following Department of Labor hearing.

> "Sincerely,
> /signature/
> GLORIA CUTLER
> Labor Advisor
> By direction of
> the Commanding Officer"

9. The Cutler affidavit states in part:

> ... I sent my letter of May 9, 1991, to the Bankruptcy Court with the list attached and a Proof of Claim form with the case caption to assist in directing the material to the proper party. My sole purpose in sending the list was to assist the court and the trustee in understanding the scope of the withholding and the current status of the proceedings. I at no time intended to submit a claim to the Bankruptcy Court. To the best of my knowledge, I did not sign my name to any claim form.

Affidavit of Gloria Cutler, at ¶ 4.

funds and disburse them to the employees; by retaining such funds, then providing the employees with information to support their alleged claims against the debtor in this Court, the United States has sought to enforce the entirety of its interest in the withheld funds. In stating that the amounts were withheld for failure to pay amounts owed to employees in alleged violation of the Davis–Bacon Act and detailing the amounts due each employee, the Cutler letter expressly states the nature and amount of the government's claim against the debtor. By asserting that the funds were properly withheld by the government for payment of the true creditors (the employees) postpetition, the Cutler letter demonstrates an intent to hold the debtor liable.[10] Taken together, the Cutler letter and the prepetition and postpetition actions of the United States contain all of the elements of an informal proof of claim on behalf of the United States, and serve as the functional equivalent of one particularly where, as here, the United States has aided the alleged true owners of the funds in filing formal proofs of claim with this Court.

The United States has argued that "from the start of these proceedings, the Government has demonstrated only their intent to have back wage liability determined in the appropriate administrative forum and satisfied from withheld funds which are not property of the estate." Defendant's Memorandum in Response to Trustee's Memorandum in Opposition to Motion for Dismissal, at 5. While it asserts the employees should be paid from the withheld funds, however, the United States provided assistance to the employees to seek recovery from the debtor's estate for those very same alleged unpaid wages. In other words, the United States is attempting to use its sovereign immunity to shield funds earmarked for payment to the employees, while at the same time assisting the employees to obtain a potential double recovery from the depleted debtor's estate.

The legislative history to section 106(a) states

> The governmental unit cannot receive distribution from the estate without subjecting itself to any liability it has to the estate within the confines of a compulsory counterclaim rule. Any other result would be one-sided.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 317 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6274. The situation in this case involves an attempt to violate this policy. The United States has withheld funds on behalf of creditors, but asserts sovereign immunity as a defense against any challenge to the withholding. The creditors, who otherwise would not be able to claim sovereign immunity had they obtained the fund themselves, are consequently not only able to seek satisfaction of the debt from the withheld funds, but are further aided by the United States to seek compensation from the bankruptcy estate as well.

The United States argues the Cutler letter cannot constitute an informal proof of claim, because Cutler did not have authority to file a proof of claim. This argument does not go beyond a bare assertion, and does not indicate precisely what authority Cutler allegedly did or did not have.[11] In addition, the argument misses

---

**10.** There are two "intents" demonstrated under these circumstances: the intent of the government to retain the funds it has withheld until the Department of Labor has determined the amounts to be paid to employees, and the intent of the government to satisfy such amounts from the withheld funds. Regardless of the former intent, the latter intent most assuredly constitutes an "intent to hold the debtor liable," even though such liability is on behalf of third parties.

**11.** In her affidavit, Cutler states in part:
... I sent my letter of May 9, 1991, to the Bankruptcy Court with the list attached and a Proof of Claim form with the case caption to assist in directing the material to the proper party. My sole purpose in sending the list was to assist the court and the trustee in understanding the scope of the withholding and the current status of the proceedings. I at no time intended to submit a claim to the Bankruptcy Court. To the best of my knowledge, I did not sign my name to any claim form. I have no authority as a Labor Specialist to submit a claim on behalf of the government.
Affidavit of Gloria Cutler, at ¶ 4.

the point. The requirements for an informal proof of claim are that the document (1) show the nature and amount of the debt, and (2) *"evidence* an intent to hold the debtor liable." *Anderson–Walker, supra,* 798 F.2d at 1287–88. The Cutler letter shows the nature and amount of the debt. Whether Cutler had the authority to create an intent to hold the debtor liable, her letter evidences such intent by the United States. The issue is, therefore, not whether Cutler had authority to perform an action with the legal consequence of constituting a proof of claim, but whether she had authority to send a letter making the statements that were made.

■ The United States has neither presented evidence nor argued that Cutler lacked authority to send the letter, or to make such representations on behalf of the United States. The trustee points out that the letter is signed by Cutler, "By the direction of the Commanding Officer," indicating that Cutler had at least some authority to mail the letter. The United States does not challenge the accuracy of the representations made; in fact, the government has affirmed their accuracy. Rather, the essence of the government's argument appears to be solely that Cutler has no authority to make a decision to submit a proof of claim. This is not the situation here, however, since no formal proof of claim was filed. Under these circumstances, the Court concludes the trustee has met its burden to show a genuine issue of material fact exists as to the authority of Cutler.

C. The Debtor Has A "Claim" Against the United States As Required by Section 106(a).

■ Two remaining arguments are presented by the United States to support its contention it has not waived its sovereign immunity. The first issue regards the existence of a "claim" by the debtor against the United States. The United States, relying on *Knoepfle v. Kenko, Inc. (In re Barrett),* 39 B.R. 792, 794 (Bankr. D.Minn.1984) (summary judgment for city sued by trustee of subcontractor, where city had paid sub-subcontractors directly), contends the general rule is that a subcontractor may not recover from the owner of the property unless there is a contractual relationship between them. The United States consequently argues the debtor, as a subcontractor, cannot sue the government as the debtor is not in privity with it. However, "[i]t is not new law that unpaid subcontractors hold an equitable interest in a contract balance owed by a building owner to a general contractor." *Active Fire Sprinkler Corp. v. United States Postal Service,* 811 F.2d 747, 755 (2d Cir.1987) (holding that unpaid subcontractor who sued U.S. Postal Service for funds due general contractor was entitled to assert equitable lien theory).

The government, in controverting this point and others, impliedly challenges the existence of a "claim" by the debtor against the United States on the ground the funds were properly withheld because the debtor failed to pay its employees. This is the central issue in the case. In the complaint, the trustee draws attention to the "Findings of Fact, Conclusions and Order" issued by this Court denying the claims of the fifteen employees who submitted proofs of claims. Judicial notice is taken of this order. Because every employee who submitted a proof of claim was denied recovery in default of any effort to support any unpaid wages, and because at least eleven of these employees were also listed as unpaid in the Cutler letter, it is concluded there is a genuine issue of material fact as to whether the funds are properly withheld, regardless of any allegation of wrongdoing.

The second issue presented by the government involves the requirement the claim against the governmental unit be "property of the estate." The United States characterizes the language of section 106(a) as requiring the fund withheld by the government be property of the estate, and cites numerous cases holding unpaid contract proceeds not to be property of the estate in support of this proposition.

■ The government's arguments are misplaced. The language of subsection

(a) refers to "claim against such governmental unit that is property of the estate." [12] By its terms, it is the *claim* against the governmental unit, and not the source of payment of such claim, that must be property of the estate. Causes of action are property of the bankruptcy estate under section 541. *Sierra Switchboard Co. v. Westinghouse Electric Corp.*, 789 F.2d 705, 707–09 (9th Cir.1986) (holding that personal injury claim that arose prepetition was property of the estate, regardless of whether the claim was transferable or assignable under state law). The trustee's claim against the government being property of the estate, the requirements of section 106(a) are met.

The cases cited by the United States are not contrary to this interpretation. In *Pearlman v. Reliance Insurance Co.*, 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962), the case primarily relied upon by the United States, there was a finding the debtor had not paid its laborers and materialmen wages required by the contract. 371 U.S. at 134, 83 S.Ct. at 233. Here, as discussed *supra*, there is a genuine issue of material fact as to whether the debtor paid its employees all wages to which they were entitled, and the United States has wrongfully withheld payment of the funds nonetheless. If the employees have no right to payment, and the government has no right to withhold the funds, the debtor has a "legal or equitable interest in property" sufficient to bring it within section 541. *See* 11 U.S.C. § 541(a)(1).[13] *See also Active Fire Sprinkler, supra*, 811 F.2d at 755 (subcontractor entitled to equitable lien on unpaid contract proceeds); *Donovan v. Quinta Contractors, Inc. (In re Quinta Contractors, Inc.)*, 34 B.R. 129, 131 (Bankr.M.D.Pa.1983) (amounts withheld from contractor under Davis–Bacon Act in excess of debtor's liability are property of the debtor's estate). Similarly, the cases cited by the United

States to argue the withheld funds constitute a statutory trust on behalf of the employees do not negate the debtor's ownership of a claim against the government for wrongfully retaining those funds. *See, e.g., In re Frank Mossa Trucking, Inc.*, 65 B.R. 715 (Bankr.D.Mass.1985) (concluding funds withheld under Service Contract Act were held in statutory trust, and thus not property of the estate; not dealing with debtor's right to recover withheld funds if no liability under Act). There being genuine issues of material fact, and the United States not being entitled to prevail as a matter of law, the motion to dismiss will be denied on this basis.

## CONCLUSION

Based on the foregoing, the Court concludes the United States has waived its sovereign immunity under section 106(a). The United States' motion to dismiss is denied.

---

**12.** 11 U.S.C. § 106(a).

**13.** Section 541 is entitled "Property of the estate" and provides in its relevant part:
(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all of the following property, wherever located and by whomever held:
(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.
11 U.S.C. § 541(a)(1).